IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re:<br><br>**LEGENDARY FIELD EXHIBITIONS, LLC** and **EBERSOL SPORTS MEDIA GROUP, INC.,**<br>        Debtors. | §<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 19-50900-cag<br>Chapter 7 |
| **COLTON SCHMIDT AND REGGIE NORTHRUP**<br>        Plaintiffs,<br>vs.<br>**AAF PLAYERS, LLC, THOMAS DUNDON, CHARLES "CHARLIE" EBERSOL, LEGENDARY FIELD EXHIBITIONS, LLC, AAF PROPERTIES, LLC, EBERSOL SPORTS MEDIA GROUP, INC.**<br>        Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADV. PROC. 19-05053-cag |

**MOTION TO DISMISS WITH PREJUDICE
THE "CLASS ACTION COMPLAINT FOR DAMAGES"
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

COMES NOW Defendant Charles "Charlie" Ebersol ("**Ebersol**") and files this *Motion To Dismiss With Prejudice The "Class Action Complaint For Damages" Pursuant To Fed. R. Civ. P. 12(b)(6)* and in support thereof, shows the Court as follows:

### I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuance to 28 U.S.C. § 1334(b).

2.    This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), & (O). To the extent that this adversary proceeding, or any part thereof, is not a core matter, Ebersol consents to the entry of a final judgment by the Bankruptcy Court pursuant to 28 U.S.C. § 157(c) and *Wellness Intern. Network, Ltd. v. Sharif*, __ U.S. __, __, 135 S. Ct. 1932, 1944–45 (2015).

3. Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1408 & 1409.

## II. BACKGROUND

4. Plaintiffs are two players from the now-defunct American Alliance of Football league (the "**League**") who purport to seek contract and tort damages on behalf of themselves and all similarly situated players[1] arising out of the League's suspension of operations and bankruptcy filing eight weeks into its inaugural season.

5. With respect to Ebersol specifically, Plaintiffs maintain he made statements indicating the League would operate for many years into the future. Unfortunately for Plaintiffs, they cannot connect the dots between Ebersol's statements and any cognizable cause of action. In this case, Ebersol is merely a convenient target because of his public visibility, but the Plaintiffs have no viable claims against him in his individual capacity, or against any of the other defendants named in the lawsuit. The Plaintiffs' contracts were terminated in accordance with the terms thereof when the Alliance of American Football ceased operations, they – and all other players – were paid for the games they played, and there is no basis in either fact or law for the Plaintiffs to be awarded any additional monies.

6. Accordingly, the "Class Action Complaint For Damages" filed by the Plaintiffs (the "**Complaint**") should be dismissed in its entirety as to Ebersol. Ebersol joins in the Motion to Dismiss filed by Defendant Thomas Dundon ("**Dundon**"), incorporates the analysis therein to the extent that the claims asserted against Ebersol and Dundon are identical, and submits the additional arguments below in support of his request for relief.

---

[1] The Court – with the concurrence of the interested parties – has indicated that it will address issues relating to class certification only if the Complaint survives the initial dismissal phase. Therefore, Ebersol reserves all arguments in opposition to class certification for the appropriate stage of the case. For purposes of this motion to dismiss, Ebersol opposes class certification and submits that the plaintiffs will not be able to make the requisite showing

### III. APPLICABLE LEGAL STANDARDS

7. Fed. R. Civ. P. 12(b)(6) codifies the complete affirmative defense that a party has failed to state a claim upon which relief can be granted. Under the liberal pleading standards of the Federal Rules of Civil Procedure, while a complaint "does not need detailed factual allegations," the claimant's obligation to "provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[2]

8. The Supreme Court has further explained that

> [u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

9. The Fifth Circuit has construed these standards as requiring that a complaint

> contain sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016). This standard comports with the Supreme Court's interpretation in *Iqbal* and *Twombly* that "[t]he plausibility standard is not akin to a

---

[2] Unless otherwise noted, all internal quotation marks, citations, and brackets are omitted.

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

10. While most claims are subject to the liberal pleading standard described above, Fed. R. Civ. P. 9 requires claims of fraud to be pleaded with particularity. *See* Fed. R. Civ. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent ... and explain why the statements were fraudulent." *Hoffman v. L & M Arts*, 838 F.3d 568, 577 (5th Cir. 2016). Further,

> The Fifth Circuit requires a plaintiff to allege "the particulars of time, place, and contents of the false representations" (*Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir.1997)), as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the "who, what, when, where, and how" of the alleged fraud. *See United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir.2003) (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997)).

*In re Antone's Records, Inc.*, 445 B.R. 758, 775 (Bankr. W.D. Tex. 2011)

11. As set forth below, none of the Plaintiffs' claims against Ebersol meet the requisite standards. In summary, the Plaintiffs cannot connect the dots between any statement made by Ebersol or any action (or inaction) by him that resulted in any damages to them. Therefore, the claims should be dismissed.

## IV. ARGUMENT & AUTHORITIES

12. Plaintiffs' factual allegations are insufficient to give rise to any cognizable cause of action against Ebersol. The factual allegations as set forth in the Complaint that relate specifically to Ebersol are as follows:

- 15. As early as May, 2017, [Ebersol] formed a joint venture or partnership agreement to launch the Alliance of American Football, a new professional football league.

- 16. On March 20, 2018, AAF CEO Charlie Ebersol publicly announced the creation of the AAF. Ebersol created the league intending to appear to potential AAF players as a legitimate league that would provide a potential path to a successful career as a future National Football League player.

- 17. On March 20, 2018, AAF CEO Charlie Ebersol stated that all investors in the league understood that the league required patience and wisdom to succeed, "if you are not committed to seven to ten years, you are not taking this seriously."

- 18. On March 20, 2018 AAF CEO Charlie Ebersol stated that the AAF *wanted* to find partners who understood that in order to build the league into a successful and viable business, long term and patient investment strategy was necessary. The AAF *wanted* investors committed to the long-term health of the league and wanted to present itself as stable and secure.

- 19. On March 20, 2018, AAF CEO Charlie Ebersol stated "we are not reinventing football. We *want* to reinvent the experience … to a large degree *what we think this is*, is a very sober business model, long term plan that over the course of many years is going to build into something worthwhile. We are not going to boil the entire ocean in the first day."

- 22. On October 15, 2018, Reggie Northrup and AAF Players, LLC entered into a valid three-year term contract (the "Contract"). Reggie Northrup agreed to be bound by all terms and conditions set forth in the agreement. In consideration of

the mutual promises, rights, obligations, terms and conditions, Defendant AAF Players, LLC agreed to pay Reggie Northrup in ten equal payments:

    a. $70,000 in the league year of 2019;

    b. $80,000 in the league year of 2020; and

    c. $100,000 in the league year of 2021.

- 23. On October 15, 2018, Colton Schmidt and AAF Players, LLC entered into a valid three-year term contract (the "Contract"). Colton Schmidt agreed to be bound by all terms and conditions set forth in the agreement. In consideration of the mutual promises, rights, obligations, terms and conditions, Defendant AAF Players, LLC agreed to pay Colton Schmidt in ten equal payments:

      a. $70,000 in the league year of 2019;

      b. $80,000 in the league year of 2020; and

      c. $100,000 in the league year of 2021.

- 35. On February 19, 2019, [Ebersol] as the CEO and co-founder of the league, said the league was never in any serious financial jeopardy. Ebersol is quoted as saying in response to Defendant Dundon's investment, "After that first week of games, we were at the height of our valuation and were able to dictate our future."

- 44. All Defendants, and each of them, were beneficiaries of AAF Players, LLC's contracts with league players and staff. Defendants, and each of them, were all involved in cooperative and joint efforts for the operation and management of AAF.

- 45. On April 2, 2019, Colton Schmidt, Reggie Northrup and Class Members' Contract had not been voided, canceled, or terminated by the Defendants.

- 46. On April 2, 2019, Defendants were not excused in any way from performing every significant material condition, covenant, and obligated [sic, "obligation"] owed to Plaintiffs and Class Members.

(Emphases added.)

13. Based on the above-referenced allegations, the Plaintiffs seek recovery from Ebersol based on claims of promissory estoppel (Count III), failure to pay wages in violation of California Labor Code § 201 (Count IV), Fraud (Count VI), and false promise (Count VII). Even considering the factual allegations in the light most favorable to the Plaintiffs and construing the Complaint liberally, the Plaintiffs have not pleaded plausible claims against Ebersol as required under Federal Rules of Civil Procedure 8 & 9, as interpreted by *Iqbal*, *Twombly*, and their progeny.

**A. Plaintiffs' Promissory Estoppel Claim Is Not Plausible**

14. Under California law, in order prevail on a claim of promissory estoppel, the plaintiff must show:

> (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [that is] both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance. *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07–02864 JSW, 2007 WL 3232276, *6 (N.D.Cal. Nov. 1, 2007) (quoting *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal.App.3d 885, 890, 131 Cal.Rptr. 836 (1976)). A promise that is vague, general or of indeterminate application is not enforceable. To be enforceable, the promise must be sufficiently definite that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages. *Id.* (quoting *Aguilar v. Int'l Longshoremen's Union Local # 10*, 966 F.2d 443, 446 (9th Cir.1992); *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1017 (9th Cir.2003)).

*Griffin v. Green Tree Servicing, LLC,* 166 F. Supp. 3d 1030, 1044 (C.D. Cal. 2015) (internal quotation marks omitted). This claim fails as both a matter of law and a matter of fact.

15. As a matter of law, this claim for promissory estoppel must fail because the Plaintiffs admit that their relationship with the League is governed by an enforceable contract between each player and Defendant AAF Players, LLC ("**AAF Players**"). *See, e.g.*, Complaint ¶ 22 (alleging that Plaintiff Northrup and AAF Players entered into a valid contract); Complaint ¶ 23 (alleging that Plaintiff Schmidt and AAF Players entered into a valid contract); and Complaint ¶ 25 (alleging that all players in the League entered into the same standard contract). A claim for promissory estoppel, however, merely "suppl[ies] consideration for a promise when no actual consideration was given by the promise." *Youngman v. Nevada Irr. Dist.*, 449 P.2d 462, 469 (Cal. 1969). In other words, a claim for promissory estoppel does not exist when the parties have a contract governing the pertinent subject matter. *See Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1146 (E.D. Cal. 2017), *reconsideration denied*, 214CV00046KJMCKD, 2018 WL 1014617 (E.D. Cal. Feb. 21, 2018). Here, Plaintiffs admit that an express contract governs the subject matter of, *inter alia*, their compensation for employment by the League.[3] *See Walker v. KFC Corp.*, 728 F.2d 1215, 1219 (9th Cir. 1984) (relying on *Youngman* for the proposition that a plaintiff may not recover on a promissory estoppel theory where all of the plaintiff's reliance was bargained for under an express contract). Thus, as a matter of law, their relief – if any – must arise from a breach of contract claim against the League and not as a promissory estoppel claim against other Defendants, including Ebersol.

16. Additionally, Plaintiffs cannot state a cognizable claim for promissory estoppel against Ebersol as a matter of fact. The statements attributed to Ebersol cannot be characterized as "a promise clear and unambiguous in its terms." *B & O Mfg., Inc.* v, No. C 07–02864 JSW,

---

[3] A true and correct copy of the Standard Player Agreement ("**SPA**") is attached hereto as **Exhibit A**. The Court may properly consider the SPA in adjudicating this Motion to Dismiss because it is referred to in the Complaint and is central to the Plaintiffs' claims. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)

2007 WL 3232276, *6. Nothing in the statements relied on in the Complaint created a promise on behalf of Ebersol or anyone else that would give rise to a cognizable claim in favor of the Plaintiffs.

> A party plaintiff's misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance.... If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, ... he will be denied a recovery. A mere expectation cannot be equated with the necessary justifiable reliance.

*Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 227, 120 Cal. Rptr. 3d 507, 515 (2011), as modified (Feb. 9, 2011) (internal citations, quotation marks, and brackets omitted) (ellipses in original). No "reasonable person" would rely on the statements attributed to Ebersol as set forth in the Complaint for purposes of determining that they were entitled to specific compensation for a given period of time, as asserted here by the Plaintiffs. The statements attributed to Ebersol are statements of his hopes and desires for the League, they were not statements regarding the then-existing status of the League or promises for the future. Therefore, the Plaintiffs have not stated a plausible claim under their promissory estoppel theory.

17. Significantly, the Complaint is devoid of *any* allegation that the Plaintiffs actually *relied on* those statements by Ebersol in deciding to contract with AAF Players. In fact, there is not even an allegation that Plaintiffs were *aware of* those statements at the time they entered into their contracts or at any time while their contracts were in force.

18. The SPA contains a provision allowing for immediate termination "effective upon the giving of written notice." *See* **Exhibit A**, ¶ 12.(b). The SPA also contains an integration clause stating that the SPA contains the full agreement of the parties. *See id.*, ¶ 12.(h). Thus, Plaintiffs could not have justifiably relied on any supposed "promise" by Ebersol that contradicts the express terms of their admitted contract with AAF Players. Therefore, Plaintiffs failed to expressly plead that they relied on those supposed "promises" and any such allegation could not be considered a

"well-pleaded" fact because it is demonstrably false. *See Hunt v. Invesco Funds Group, Inc.*, CIV.A. H-04-02555, 2006 WL 1581846, at *5 (S.D. Tex. June 5, 2006) (citation omitted).

19. Even construing the Complaint liberally and taking all the well-pleaded factual allegations as true, it is readily apparent that the Plaintiffs have not stated a plausible claim for relief under the promissory estoppel theory. The Complaint does not contain well-pleaded facts that would establish a clear and unambiguous promise or detrimental reliance by the Plaintiffs. Therefore, the promissory estoppel claim against Ebersol is not plausible and should be dismissed without pursuant to Fed. R. Civ. P. 12(b)(6). Because the claim is barred as a matter of law, repleading would be futile and the claim should be dismissed with prejudice. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012).

**B. Plaintiffs' Labor Code Claim Is Not Plausible**

20. Plaintiffs allege that, among others, Defendant Ebersol failed to pay wages that were due immediately upon the termination of their contracts pursuant to Section 201 of the California Labor Code. In addition to the arguments raised by Dundon showing that Plaintiffs have not pleaded their claim with the requisite specificity, the Labor Code claim fails as a matter of fact and law and should be dismissed.

21. The pertinent statutory language provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a) (West). The Complaint also makes a claim under Section 203 of the California Labor Code which relates to the "willful" failure to pay wages within the time required under Section 201.

22. The Complaint offers only vague and conclusory allegations to support the claim for unpaid wages, which is insufficient under even the liberal pleading standards of Fed. R. Civ.

P. 8. *See* Complaint ¶¶ 71-76 (Plaintiffs' claim under the Labor Code is nothing more than a bare recitation of the elements).

23. Notably, there is no allegation in the Complaint that Ebersol, in his individual capacity, was the Plaintiffs' employer. Ebersol submits that under the test adopted by the California Supreme Court, he could not be deemed the Plaintiffs' employer. *See Zaremba v. Miller*, 113 Cal. App. 3d Supp. 1, 5, 169 Cal. Rptr. 688, 689 (App. Dep't Super Ct. 1980) (California uses the test set forth in section 220 of the Restatement of Agency to determine if a relationship is that of an employer/employee or an independent contractor). Furthermore, under the express terms of the SPA, AAF Players – not Ebersol – was the Plaintiffs' employer. *See* **Exhibit A**, p. 43, section 1 ("During the Contract Period, the Alliance shall employ Player ….") Thus, as a matter of law, Ebersol, individually, cannot be held liable for wages that were allegedly payable by the Plaintiffs' "employer" under the California Labor Code.

24. Additionally, there are no allegations about the termination of the Plaintiffs' contracts with AAF Players (which were terminable immediately upon written notice), what wages – if any – were due and owing, and what wages remain unpaid. Upon information and belief, and confirmed by the absence of any wage claims in the Debtors' Schedules, the players were paid for each game that was played prior to the termination of their contacts. Thus, Plaintiffs cannot make any well-founded allegation of unpaid wages; therefore, amendment would be futile and the claim should be dismissed with prejudice.

25. Further, there are no factual allegations supporting the claim that the failure to pay any wages owed was "willful". "[C]onclusory allegations of willfulness, without further factual support, are insufficient" to state a plausible claim. *Brown v. Wal-Mart Stores, Inc.*, C 08-5221 SI, 2013 WL 1701581, at *5 (N.D. Cal. Apr. 18, 2013).

26. Given the paucity of well-pleaded factual allegations necessary to support the claims under the California Labor Code, Plaintiffs have failed to state a plausible claim for relief against Ebersol and therefore, the claim should be dismissed. Because the claim cannot be brought against Ebersol, individually, as a matter of law, repleading would be futile and the claim should be dismissed with prejudice. *See Pervasive Software Inc.*, 688 F.3d at 232.

### C. Plaintiffs' Fraud Claim Is Not Plausible

27. Under California Law, to make a claim for fraud, the Plaintiffs must show:

> (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.

*Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990, 102 P.3d 268, 274 (2004) (citing *Lazar v. Superior Court*, 909 P.2d 981 (Cal. 1996)). Under Fed. R. Civ. P. 9, those elements must be pleaded with particularity, except that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Plaintiffs' pleading does not meet Rule 9's standards and therefore, Plaintiffs have failed to state a plausible claim for relief.

28. In particular, Plaintiffs have not pleaded any factual allegations of false representations or concealment by Ebersol with any degree of particularity. The statements attributed to Ebersol in paragraphs 16-19 of the Complaint all relate to the League's desire to attract long-term investors who did not expect quick returns. Not a single one of the pleaded statements can be fairly understood to be "a representation that [the League had] obtained enough funding for years of operations" as alleged in paragraph 84 of the Complaint.

29. Additionally, there are no factual allegations that support Plaintiffs' claims that Ebersol concealed information that he had a duty to disclose, including the alleged knowledge that (a) the League was insolvent or not financially viable; and (b) the intent of the "main investor" --

*i.e.,* Thomas Dundon, who did not invest in the League until after the Plaintiffs had signed their contracts with AAF Players – intended to "fraudulently, deceptively, and pretextually" acquire the League's intellectual property, as alleged in paragraph 86 of the Complaint.

30. Notably, there is no well-pleaded allegation that Ebersol knew that any of the statements attributed to Ebersol as set forth in the Complaint were false at the time he made them. In fact, the statements as recited in the Complaint pertain to Ebersol's opinions of what kind of investors the League was *looking to partner with*, not a characterization of any investors that were committed to the League. The statements made in 2018 cannot be construed as a statement or representation about the League's financial viability at that time or at any time in the future. Further, the statement that Ebersol allegedly made in 2019 after the opening weekend cannot be construed as a promise to the Plaintiffs or a statement about the League's financial viability.

31. Significantly, there are no well-pleaded allegations in the Complaint to support either an intent to induce reliance or justifiable reliance by the Plaintiffs. There is no allegation that Ebersol's statements were directed toward Plaintiffs (or any potential player) or were intended to attract players to the League. Furthermore, there is no allegation that the Plaintiffs relied on – or were even aware of – Ebersol's statements when they entered the contracts with AAF Players. With respect to the 2019 statements, there is no allegation that Plaintiffs changed their positions (*i.e.,* their status of being under contract with AAF Players) based on those statements. In fact, such an allegation would be nonsensical. There is no allegation in the Complaint that, but for Ebersol's comments, the Plaintiffs were contemplating breaching their contracts and quitting the League and that they continued to honor their contractual obligations in reliance on those statements.

32. Finally, Plaintiffs have not alleged any cognizable damages arising from the supposed fraud. Plaintiffs allege that they "subjected themselves to serious risk of physical harm" by playing in the League, but that is not a compensable category of damages. Additionally, Plaintiffs allege that they chose to "forego other financial opportunities" to play in the League, but they do not specify any such opportunities that were available to them either at the time they entered their contracts with AAF Players or at any time while those contracts were in place.

33. Based on the foregoing, the Plaintiffs have failed to plead facially plausible claims for relief under their fraud theory and such claim should be dismissed.

**D. Plaintiffs' False Promise Claim is Not Plausible**

34. Under California Law, "an action based on a false promise is simply a type of intentional misrepresentation, i.e., actual fraud." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 159, 2 Cal. Rptr. 2d 861, 863–64 (1991) (footnote omitted). To prevail on such a claim, a plaintiff "must specifically allege and prove, among other things, that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing." *Tarmann*, 2 Cal. App. 4th at 159, 2 Cal. Rptr. 2d at 863 (citations omitted). Thus, this claim is duplicative of Plaintiffs' fraud claim and fails for the same reasons stated in section IV.C., above.

35. Specifically, Plaintiffs have not sufficiently pleaded facts with any degree of particularity supporting the allegation that Ebersol made any promise to the Plaintiffs, that he did not intend to perform such promise, or that any promise Ebersol made was intended to induce the Plaintiffs to act or refrain from acting. To summarize the arguments set forth above, the statements attributed to Ebersol in the Complaint cannot be construed as a "promise" to anyone, let alone the Plaintiffs or any other player in the League. Plaintiffs do not allege that the statements attributed

to Ebersol as set forth in the Complaint were directed at any players in the League or that such statements were intended to induce any player to contract with AAF Players. Although Plaintiffs make a bald allegation that they relied on Ebersol's statements, there is no allegation that they were even aware of those statements when they contracted with AAF or at any time while their contracts were in force and effect. The conclusory allegation is insufficient under Rule 8. Finally, the Plaintiffs make conclusory allegations that they were damaged by the alleged false promises, which are insufficient to satisfy Rule 8. As set forth above, there are no factual allegations that would support a finding of damages.

## V. CONCLUSION

36. Plaintiffs have not stated any plausible claims for relief against Charles Ebersol in his individual capacity. The well-pleaded facts as alleged in the Complaint, such as they are, cannot satisfy the applicable pleading standards under Federal Rules of Civil Procedure 8 and 9.

37. Plaintiffs' claim against Ebersol based on promissory estoppel is barred as a matter of fact and law. As a matter of law, they cannot base a claim on promissory estoppel in a situation where, as here, all of their promises were bargained for in an express contract. As a matter of fact, the claim is barred because there are no allegations that the Plaintiffs actually relied on Ebersol's statements at the time they entered their contracts with AAF Players. Moreover, no reasonable person would rely on the statements attributed to Ebersol as a specific, ascertainable promise of future payment or employment. Because the pleading is deficient and repleading would be futile, the claim against Ebersol for promissory estoppel should be dismissed with prejudice.

38. Plaintiffs' claim against Ebersol under the California Labor Code is also barred as a matter of fact and law. As a matter of law, Plaintiffs have not sufficiently pleaded a basis for individual liability as there is no allegation that Ebersol was the Plaintiffs' "employer".

Additionally, there are insufficient allegations to establish that Plaintiffs have not been paid any wages owed to them. Finally, the allegations that wages were not paid "willfully" must be pleaded with specificity, but the Complaint contains merely conclusory allegations. Because the Plaintiffs – and all players – were paid in full for each game played before the termination of their contracts, repleading would be futile. Therefore, the claim against Ebersol under the California Labor Code should be dismissed with prejudice.

39. Plaintiffs' claim for fraud must also fail because they have not pleaded with sufficient specificity any of the elements of their fraud claim. There is no statement attributable to Ebersol that can be characterized as a misrepresentation of the League's current or future financial stability. Nor have the Plaintiffs shown that Ebersol had a duty to disclose any information about the League's financial position to players or prospects, whether before or after the players signed contracts with AAF Players. Plaintiffs have not pleaded that Ebersol made any statements that he knew were false when he made them. Plaintiffs have not sufficiently pleaded that they reasonably relied on any statements by Ebersol when they decided to sign their contracts with AAF Players *or* that they decided to comply with their contractual obligations only because of statements Ebersol made during the League's season. Finally, Plaintiffs have not sufficiently alleged damages. Accordingly, the fraud claim should be dismissed.

40. Plaintiffs' claim based on "false promises" is entirely duplicative of their fraud claim and should be dismissed for the same reasons. Under California Law, "false promises" is a species of fraud and not an independent tort. In any event, the elements of such a claim must be specifically pleaded, and Plaintiffs have not met that burden. In particular, they have not specifically pleaded that Ebersol made any promise to them, or that they were even aware of Ebersol's statement, that he had no intention of performing said promise at the time it was allegedly

made, and that Ebersol intended to deceive Plaintiffs or induce them to act or refrain from acting. In short, the Complaint does not sufficiently allege any connection between the statements attributed to Ebersol and the Plaintiffs' decisions to contract with AAF Players.

41. A careful reading of the Complaint reveals that the Plaintiffs have no basis to seek recovery against Ebersol in his individual capacity. None of the claims against him are pleaded with the requisite specificity, even when the Complaint is construed liberally in Plaintiffs' favor and the well-pleaded facts are taken as true. Nor can Plaintiffs cure these pleading defects through amendment, especially to the extent that their claims are invalid as a matter of law. Accordingly, Ebersol respectfully requests that the claims against him be dismissed with prejudice.

WHEREFORE, PREMISES CONSIDERED, Defendant Charles "Charlie" Ebersol prays that the Court enter an order dismissing with prejudice the claims against him and granting him such further relief to which he may be entitled at law or equity.

Date: October 29, 2019

Respectfully submitted,

LANGLEY & BANACK, INC.
745 East Mulberry, Suite 700
San Antonio, Texas 78212
Telephone: (210) 736-6600
Facsimile: (210) 735-6889

By:    /s/ Natalie F. Wilson
NATALIE F. WILSON
State Bar No. 24076779
nwilson@langleybanack.com
DAVID S. GRAGG
dgragg@langleybanack.com
State Bar No. 08253300

-AND-

        Michael J. Saltz, Esq.
        JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
        1880 Century Park East
        Suite 900
        Los Angeles, California 90067
        Tel: 310.446.9900 Ext. 201
        Fax: 310.446-9909
        msaltz@jrsnd.com
        *PRO HAC VICE PENDING*

        **ATTORNEYS FOR DEFENDANTS CHARLES EBERSOL AND EBERSOL SPORTS MEDIA GROUP, INC.**

## CERTIFICATE OF SERVICE

    The undersigned counsel of record hereby certifies that on October 29, 2019, true and correct copies of the foregoing document were served electronically via the Court's CM/ECF facilities to all those entitled to receive service in this adversary proceeding and to all counsel of record via email, as follows:

Attorneys for Plaintiffs
Jonathon S. Farahi
Abir Cohen Treyzon Sala, LLP
16001 Ventura Blvd., Suite 200
Encino, CA 91436
JFarahi@actslaw.com

Boris Treyzon
Abir Cohen Treyzon Sala, LLP
16001 Ventura Blvd., Suite 200
Encino, CA 91436
btreyzon@actslaw.com

Katharine Battaia Clark
Hedrick Kring, PLLC
1700 Pacific Ave., Ste. 4650
Dallas, TX 75201
KClark@HedrickKring.com

Attorneys for Thomas G. Dundon, Defendant
Jason I. Bluver
Payne & Fears LLP
235 Pine Street, Suite 1175
San Francisco, CA 94104

Brent Douglas Hockaday
Bell Nunnally & Martin
2323 Ross Avenue, Suite 1900
Dallas, TX 75204

Pro Se
AAF Players, LLC
4525 Macro
San Antonio, TX 78218

AAF Properties, LLC
4525 Macro
San Antonio, TX 78218

                                                    */s/ Natalie F. Wilson*
                                                    Natalie F. Wilson