**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **LEGENDARY FIELD EXHIBITIONS,** | § | **CASE NO. 19-50900-cag** |
| **LLC and EBERSOL SPORTS MEDIA** | § | **Chapter 7** |
| **GROUP, INC.,** | § | |
| | § | |
| Debtors. | § | |
| | § | |
| **COLTON SCHMIDT and REGGIE** | § | |
| **NORTHRUP** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | **ADV. PROC. 19-05053-cag** |
| | § | |
| **AAF PLAYERS, LLC; THOMAS** | § | |
| **DUNDON; CHARLES "CHARLIE"** | § | |
| **EBERSOL; LEGENDARY FIELD** | § | |
| **EXHIBITIONS, LLC; AAF** | § | |
| **PROPERTIES, LLC; and EBERSOL** | § | |
| **SPORTS MEDIA GROUP, INC.** | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT EBERSOL'S REPLY TO PLAINTIFFS'**
**OPPOSITION TO MOTION TO DISMISS**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

Defendant Ebersol files this his Reply to Plaintiffs' Opposition to Defendant Charles

"Charlie" Ebersol's Motion to Dismiss Plaintiffs' First Amended Complaint ("Opposition")

(Doc. 53).

**Introduction**

1.     Plaintiffs' Opposition wholly fails to validate the sufficiency of the pleadings

against Defendant Ebersol in the First Amended Complaint.  In fact, the Opposition fails to address

the real core of the pleading deficiencies as described in Defendant Ebersol's Motion to Dismiss

(Doc. 46).  The Opposition ignores several of the pleading deficiencies raised by Defendant, and addresses others only superficially.  Simply put, the Opposition inadequately addresses the pleading issues because Plaintiffs have no viable claim against Defendant Ebersol.  Plaintiffs' contracts were terminated in accordance with their terms when the Alliance of American Football league ceased operations.  Plaintiffs, as well as all the players in the league, were paid for the games they played so that there is now no basis in law or fact for a claim against Defendant Ebersol.

2.      Since Plaintiffs do not have a viable claim against Ebersol, it is hardly surprising that they are unable to satisfy the requisite pleading standards with the claims they have asserted.  As a result, their First Amended Complaint should be dismissed in its entirety as it pertains to Defendant Ebersol.

**Plaintiffs' Promissory Estoppel Claim Fails.**

3.      The Opposition relies on two statements as the basis for Plaintiffs' promissory estoppel claim.  It says that Ebersol (a) "promised Class Members that they would receive additional revenue from the number of bets placed on them via the league's gambling application" and (b) "promised, guaranteed and represented . . . that the AAF had enough money to survive the initial three-year length of their contracts." (Opposition, 9).  Even if this were true, neither of these statements would pass muster as the kind of "promise" that could serve as the basis for a claim.  As pointed out in Ebersol's Motion to Dismiss, under California law, to establish promissory estoppel a claimant must show:

> (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [that is] both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance. A promise that is vague, general or of indeterminate application is not enforceable. To be enforceable, the promise must be sufficiently definite that a court can determine the scope of the

duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.[1]

Furthermore,

A party plaintiff's misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance...If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, ... he will be denied a recovery. A mere expectation cannot be equated with the necessary justifiable reliance.[2]

Among other things, the first alleged statement regarding revenue from the gambling application is hardly definite, containing no detail as to how the revenue would be calculated and under what circumstances.  While it is possible to imagine how some football positions and corresponding players might be the subject of betting, it is hard to believe that others would be.  This alleged promise certainly could not serve as the basis for the assessment of damages without having a lot more detail on how the betting would work.  Nor is it something on which a reasonable person would rely.  Even under the most generous interpretation, it seems obvious there were some players/positions that could not rely on gambling revenue.

4.      The second "promise" that Plaintiffs rely on ("that the AAF had enough money to survive the initial three-year length of their contracts") also lacks definiteness.  In addition, the statement, if made, is the expression of a hope or expectation that something will happen, rather than a promise made to induce someone to do something in return.  Even if this could constitute a "promise" made to the players, as Plaintiffs claim, it could hardly be relied on by them.   All the players signed the same form contract to play in the league (the "SPA"), and each of those contracts provided that it was subject to immediate termination "effective upon the giving of written

---

[1] *Griffin v. Green Tree Servicing, LLC,* 166 F. Supp. 3d 1030, 1044 (C.D. Cal. 2015).
[2] *Aceves v. U.S. Bank, N.A.,* 192 Cal. App. 4th 218, 227, 120 Cal. Rptr. 3d 507, 515 (2011), as modified (Feb. 9, 2011) [ellipses in original].

**DEFENDANT EBERSOL'S REPLY TO PLAINTIFFS'**
**OPPOSITION TO MOTION TO DISMISS – Page 3**
7566209v1
08011.671

notice."[3]  The SPA also contains an integration clause stating that the SPA contains the full agreement of the parties.[4]  In light of the league's right to immediately terminate the player contracts and the integration clause in the contracts, no "reasonable person" would rely on the statements attributed to Ebersol for purposes of determining that they were entitled to specific compensation for a given period of time, as asserted here by the Plaintiffs.

5.      The statements attributed to Ebersol cannot be characterized as "a promise clear and unambiguous in its terms."[5]  Nothing in Ebersol's statements described in the Amended Complaint created a promise on behalf of Ebersol or anyone else that would give rise to a cognizable claim in favor of the Plaintiffs.  As a result, this claim against Defendant Ebersol should be dismissed with prejudice.

**Plaintiffs' Labor Code Claim Against Ebersol Fails.**

6.      In response to Defendant Ebersol's contention that Plaintiffs cannot recover from him based on the California Labor Code because he was not their employer, Plaintiffs claim that "under California law, if the employer is a corporation or other artificial entity, a plaintiff can join both the employer and any individual officer or employee who participated in the fraud." (Opposition, 11).  Plaintiffs' response is completely deficient, however, because their First Amended Complaint does not contain any factual allegations that would support their joinder of Ebersol on this claim.  Instead, the First Amended Complaint just contains a conclusory statement that "Defendants . . . were required to pay the Class any earned wages, including reimbursable expenses, within 72 hours of the cessation of a Class member's employment by AAF Players." (First Amended Complaint, ¶101).  Additionally, as described further below, Plaintiffs have not

---

[3] Exhibit A to Defendant Ebersol's Motion to Dismiss (Doc. 46) at ¶ 12.(b).
[4] *See id.* at ¶ 12.(h).
[5] *B&O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864 JSW, 2007 WL 3232276, *6 (N.D. Cal. Nov. 1, 2007).

shown in the Amended Complaint that Ebersol participated in any fraud – or even that any fraud occurred. As a result, this claim against Defendant Ebersol should also be dismissed with prejudice.

**Plaintiffs' Fraud Claim Fails.**

7. In their Opposition, Plaintiffs respond to Defendant Ebersol's challenge to their fraud allegations by reciting a hodgepodge of cases discussing the requirements for a fraud cause of action, but without any discussion of how those requirements are met by their pleadings. In addition, and apparently because of the timing of the alleged statements they rely on, Plaintiffs assert that as of the week of February 11, 2019, they "decided that they would not continue playing football in the AAF, absent (1) payment for the previous games and (2) an understanding with the AAF that it had enough capital to cover the entire term of Class members' contracts." (Opposition, 15). In essence, Plaintiffs claim that but for statements allegedly made by Ebersol after February 11, 2019, concerning the capitalization of the AAF, they would have breached their contracts and quit playing in the league. The only statements by Ebersol after February 11, 2019 concerning the AAF's capitalization and alleged by Plaintiffs are that:

> On February 19, 2019, Ebersol falsely stated to numerous news publications, . . . that AAF was never in any serious financial jeopardy. Ebersol is quoted as saying in response to Dundon's investment, "After that first week of games, we were at the height of our valuation and were able to dictate our future."

Plaintiffs' First Amended Complaint ¶60. Obviously, nothing in these alleged statements specifically addresses how much capital AAF had and whether such capital would cover the term of Plaintiffs' contracts. In addition, there is no allegation by Plaintiffs that Ebersol knew that these alleged statements were false or that he made them with the intent that Plaintiffs rely on them to their detriment. Plaintiffs do not even allege that they heard these statements of Ebersol – only

that Ebersol gave them to news publications.  Without Plaintiffs having heard the representations, they could not have acted upon them.

8.      Plaintiffs' Opposition also ignores several critical deficiencies in their fraud allegations that were raised in Ebersol's Motion to Dismiss.  For example, Plaintiffs fail to (i) plead any facts plausible on their face that Ebersol knew that any of the statements attributed to him were false when made and (ii) plead any facts to support either an intent to induce reliance by Ebersol or justifiable reliance by Plaintiffs.

9.      In addition, Plaintiffs have failed to adequately address the questions raised by Defendant Ebersol concerning their damages allegations for the fraud claim.  In the Opposition, Plaintiffs contend that they are pursuing damages for (i) being subjected to <u>risk</u> of physical harm, (ii) owed compensation, and (iii) foregone financial opportunities.  While actual physical injuries might result in recoverable damages in certain instances, the "risk of physical harm" is not a compensable category of damages.  In addition, the claim of "foregone . . . financial opportunities" is so indefinite as to not satisfy basic pleading requirements.[6]   Finally, the claim of "owed compensation" is a damages claim that does not apply to Defendant Ebersol because, as discussed above, he was not the employer of Plaintiffs and not responsible for payment of their wages.

10.    Consequently, the fraud claim against Defendant Ebersol should be dismissed with prejudice.

**Plaintiffs' Claim for Promissory Fraud Fails.**

11.    The Opposition responds to Ebersol's challenge concerning Plaintiffs' promissory fraud claims by simply asserting in conclusory fashion that the First Amended Complaint sets "forth sufficient facts to state a claim to relief for promissory fraud" without providing any

---

[6] *See* Fed. R. Civ. P. 8 and 9.

**DEFENDANT EBERSOL'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Page 6**

specifics.  (Opposition, p. 17).  Instead of providing specifics, Plaintiffs  say that they "allege throughout the FAC that Ebersol made promises, that Plaintiffs were aware of those promises, that Plaintiffs relied on such promises, and that Plaintiffs have suffered damages from subjecting themselves to the serious risk of physical harm to their health directly from playing professional football and from foregoing other financial opportunities . . .." Id.  Even in this conclusory, indefinite statement, however, Plaintiffs fail to allege that Ebersol had no intention of performing the promises (whatever they were) at the time they were allegedly made and that he had the intent to deceive or induce Plaintiffs to do something by making the alleged promises.

12.      Although Plaintiffs fail to specify which alleged "promises" their promissory fraud claim is based on, there is nothing in the First Amended Complaint attributed to Ebersol that could be construed as a "promise" which could engender reasonable reliance by the Plaintiffs or other players.  The "promises" Plaintiffs rely on for their promissory estoppel claim certainly do not merit reliance by a reasonable person.  As discussed above, the alleged promise of revenue from a betting application lacks any kind of definition, and any promise concerning capitalization for the AAF is negated by the fact that the players could be terminated immediately (so that there was no assurance of continued employment and wages).

13.      As with Plaintiffs' other claims against Defendant Ebersol, this claim, too, should be dismissed with prejudice.

**Plaintiffs Should Not Be Granted Leave to Amend Again.**

14.      Plaintiffs request that they be granted leave to further amend their First Amended Complaint if the Court finds their pleading inadequate.  This request should be denied.  Plaintiffs have already made two attempts at properly pleading claims against Defendant Ebersol, and both fail to pass muster under standard pleading requirements.  In large measure, Plaintiffs pleadings

fail because they simply do not have a viable claim to assert against Defendant Ebersol.  While the right to amend pleadings is freely given, it would not be appropriate here because further pleading by Plaintiffs would be futile.

**Conclusion**

Plaintiffs have failed to state a plausible claim for relief against Defendant Ebersol in his individual capacity.  The well-pleaded facts as alleged in the First Amended Complaint, such as they are, cannot satisfy the pleading standards under Fed. R. Civ. P. 8 and 9.

In light of the foregoing, Defendant Charles "Charlie" Ebersol prays that the Court dismiss with prejudice the claims brought against him by Plaintiffs in their First Amended Complaint and grant him such further relief to which he may be justly entitled.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By:    */s/ William N. Radford*
William N. Radford
Texas State Bar No. 16455200
E-Mail:  wradford@thompsoncoe.com
Aaron B. Michelsohn
Texas State Bar No. 24085473
E-Mail:  amichelsohn@thompsoncoe.com

700 N. Pearl Street, Twenty-Fifth Floor
Dallas, Texas 75201-2832
Telephone: (214) 871-8200
Facsimile: (214) 871-8209

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP

1880 Century Park East, Suite 900
Los Angeles, California 90067
Telephone: (310) 446-9900
Facsimile: (310) 446-9909
Michael J. Saltz
*Pro Hac Vice Application Pending*

E-Mail:  msaltz@jrsnd.com

**ATTORNEYS FOR DEFENDANT CHARLES "CHARLIE" EBERSOL**

## CERTIFICATE OF SERVICE

The undersigned counsel of record hereby certifies that on December 13, 2019, true and correct copies of the foregoing document were served electronically via the Court's CM/ECF system to all those entitled to receive service in this adversary proceeding and to all counsel of record via email, as follows:

**Attorneys for Plaintiffs**
Boris Treyzon
Jonathon Farahi
ABIR COHEN TREYZON SALA, LLP
1600 Ventura Blvd., Suite 200
Encino, California 91436
btreyzon@actslaw.com
jfarahi@actslaw.com

Joshua L. Hedrick
Katharine Battaia Clark
Britton D. McClung
HEDRICK KRING, PLLC
1700 Pacific Avenue, Suite 4650
Dallas, Texas 75201
josh@hedrickkring.com
kclark@hedrickkring.com
britton@hedrickkring.com

**Attorneys for Chapter 7 Debtors**
William A. "Trey" Wood, III
Steve Turner
BRACEWELL, LLP
711 Louisiana, Suite 2300
Houston, Texas 77002
Trey.wood@bracewell.com

**Attorneys for co-Defendant Dundon**
Jason I. Buver
Leila Narvid
PAYNE & FEARS, LLP
235 Pine Street, Suite 1175
San Francisco, California 94104
jib@paynefears.com
ln@paynefears.com

Brent D. Hockaday
Jeffrey S. Lowenstein
Brent A. Turman
BELL, NUNNALLY & MARTIN, LLP
2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
bhockaday@bellnunnally.com
jlowenstein@bellnunnally.com
bturman@bellnunnally.com

**Attorneys for Chapter 7 Trustee**

Brian S. Engel
BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP
3809 Juniper Trace, Suite 205
Austin, Texas 78738
brianen@bdfgroup.com
wdecf@bdfgroup.com

**Chapter 7 Trustee**

Randolph N. Osherow
342 West Woodlawn Avenue, Suite 100
San Antonio, Texas 78212
rosherow@hotmail.com

/s/ William N. Radford
William N. Radford