# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

IN RE:

LEGENDARY FIELD EXHIBITIONS, LLC, et al.,

       DEBTORS.

CASE NO. 19-50900-cag

CHAPTER 7

COLTON SCHMIDT, et al.,

       PLAINTIFFS,

v.

AAF PLAYERS, LLC, et al.,

       DEFENDANTS.

ADV. PROC. NO. 19-05053-cag

JUDGE CRAIG A. GARGOTTA

## DEFENDANT THOMAS G. DUNDON'S MOTION TO DISMISS

Pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure and Local Rule 7007(a)(1) of the Local Court Rules of the United States Bankruptcy Court for the Western District of Texas, Defendant Thomas G. Dundon ("Dundon") moves to dismiss with prejudice all remaining causes of action against Dundon contained in the Second Amended Class Action Complaint for Damages ("SAC") filed by Plaintiffs Colton Schmidt ("Schmidt") and Reggie Northrup ("Northrup") (Schmidt and Northrup, collectively, "Plaintiffs"), individually and on behalf of others similarly situated. Case No. 19-05053-cag ("Adv. ECF") #87. [1]

---

[1] This Motion seeks dismissal of lead plaintiffs as the class members on whose behalf they purport to sue are not parties to this action since there has been no class certification pertaining to Dundon or the surviving causes of action Plaintiffs asserted against Dundon. *See Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 250 (5th Cir. 2020) (putative class members are not parties to an action before class certification); *see also, Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020) (citing *Smith v. Bayer Corp.*, 564 U.S. 299, 306 n.4 (2011)). Rule 12(h) also excludes from any waiver mechanism the defenses for failure to state a claim (Rule 12(b)(6)) and the defense of lack of subject matter jurisdiction (Rule 12(b)(1)). The objection that a federal court lacks subject matter jurisdiction may be raised at any stage in litigation. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

# TABLE OF CONTENTS

I.     **SUMMARY** ....................................................................................................... 1

II.    **PERTINENT PROCEDURAL FACTS AND BACKGROUND** ................................. 5

    A.    Dundon Transferred This Matter to the Western District of Texas. ...................... 5

    B.    The Parties Entered Phased Discovery and Deposed the Lead Plaintiffs. .............. 6

    C.    The Court Resolved and Adjudicated All Damages Connected to the SPAs When it Approved the Settlement Between Plaintiffs, the Trustee, and Ebersol. .. 9

III.    **RULE 12(B)(6) MOTION TO DISMISS: THE COURT SHOULD DISMISS PLAINTIFFS' FRAUD CLAIMS BECAUSE PLAINTIFFS FAILED TO STATE A CLAIM FOR RELIEF** ........................................................................................ 11

    A.    Rule 12(b)(6) of the Federal Rules of Civil Procedure Legal Standard. .............. 11

    B.    Plaintiffs Elected Remedies When Plaintiffs Settled Their Breach of Contract Claim. ................................................................................................. 12

        i)    *Plaintiffs can no longer pursue their claims against Dundon because they elected to obtain judgment on a contract remedy.* .............. 12

        ii)    *Plaintiffs plead two different remedies.* ................................................. 13

        iii)    *Plaintiffs' remedies are inconsistent with each other.* .............................. 15

        iv)    *Plaintiffs chose the contract remedy and are now precluded from the rescission/repudiation remedy.* .......................................................... 16

IV.    **RULE 12(B)(1) MOTION TO DISMISS: ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' FRAUD CLAIMS BECAUSE PLAINTIFFS SUFFERED NO REDRESSABLE INJURY-IN-FACT THAT IS CONCRETE OR TRACEABLE TO DUNDON.** ...................................................................... 18

    A.    Rule 12(b)(1) of the Federal Rules of Civil Procedure Legal Standard. .............. 18

    B.    Plaintiffs Settled and/or Assigned All Claims for Damages Arising From the SPAs. ................................................................................................... 20

    C.    Risk of Physical Harm to Plaintiffs' Health Is Not an Injury-in-Fact. ................. 21

    D.    Schmidt Suffered No Physical Harm, Northrup Incurred No Costs Tied to His Thumb Injury, and Neither Plaintiff Can Establish Compensable Emotional Harm. ............................................................................................. 22

        i)    *Plaintiffs suffered no physical injury traceable to Dundon.* .................... 22

        ii)    *Plaintiffs suffered no compensable emotional harm traceable to Dundon.* ............................................................................................... 25

    E.    Plaintiffs Cannot Identify Any Lost Opportunities Assignable to Reliance on Dundon's Statements. ....................................................................................... 25

    F.    Plaintiffs' Election of Remedies Also Warrants Dismissal Under Rule 12(b)(1) of the Federal Rules of Civil Procedure. ............................................................. 28

**PRAYER** .......................................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbot v. Stevens,*
133 Ca.App.2d 252, 247 (1955) ........................................................................18

*Akin v. Certain Underwriters at Lloyd's London,*
140 Cal. App. 4th 291, 44 Cal. Rptr. 3d 284 (2006) .................................13, 15, 17

*Am. Freight Sys., Inc. v. Florida Farm Bureau Cas. Ins. Co.,*
453 So. 2d 468 (Fla. 2d DCA 1984) ..................................................................23

*Arbaugh v. Y&H Corp.,*
546 U.S. 500 (2006) ..........................................................................................1

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ....................................................................................11, 12

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler,*
178 F.3d 350 (5th Cir. 1999) ............................................................................27

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..........................................................................................11

*Bhd. of Locomotive Engineers & Trainmen v. Union Pac. R.R. Co.,*
No. EP-21-CV-122-DB, 2021 WL 2784318 (W.D. Tex. July 2, 2021) ...............20

*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund,*
24 Cal.4th 800 (2001) ........................................................................................24

*Chase v. Nix,*
No. W-15-CV-258, 2016 WL 11668710 (W.D. Tex. June 3, 2016) ................19, 20

*Christiansen v. Roddy,*
186 Cal.App.3d 780 (1986) ..........................................................................21, 23

*Crane v. Johnson,*
783 F.3d 244 (5th Cir. 2015) ............................................................................21

*Cruson v. Jackson Nat'l Life Ins. Co.,*
954 F.3d 240 (5th Cir. 2020) ..............................................................................1

*In re Cyr,*
602 B.R. 315 (Bankr. W.D. Tex. 2019) (Gargotta, J.) ....................................3, 11

*Dahlem v. Ash,*
No. MO-07-CV-041, 2007 WL 9706418 (W.D. Tex. Dec. 5, 2007) ....................12

ii

*de la Cerra Frances v. de Anda*,
 224 F. App'x 637 (9th Cir. 2007) ........................................................25

*Den Norske Stats Oljeselskap As v. HeereMac Vof*,
 241 F.3d 420 (5th Cir. 2001) ..............................................................19

*Doe v. Footstar Corp.*,
 980 So. 2d 1266 (Fla. 2d DCA 2008) ..................................................24

*Eckert Cold Storage, Inc. v. Behl*,
 943 F. Supp. 1230 (E.D. Cal. 1996)......................................................23

*Empower Texans, Inc. v. Nodolf*,
 306 F. Supp. 3d 961 (W.D. Tex. 2018)............................................18, 19

*In re Fieldwood Energy LLC*,
 No. 20-33948, 2021 WL 4839321 (Bankr. S.D. Tex. Oct. 15, 2021)...............................22, 23

*Hammett v. Sherman*,
 No. 19-CV-605 TWR (AHG), 2021 WL 4692949 (S.D. Cal. Oct. 7, 2021) ..........................25

*High v. Karbhari*,
 774 F. App'x. 180 (5th Cir. 2019) ........................................................27

*Hollingsworth v. Heavy Transp., Inc.*,
 66 Cal. App. 5th 1157, 1162, 281 Cal. Rptr. 3d 738 (2021)....................................23

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
 143 F.3d 1006 (5th Cir. 1998) ............................................................19

*Hopkins v. Green Dot Corp.*,
 No. 5:16-CV-365-DAE, 2016 WL 4468272 (W.D. Tex. Aug. 24, 2016) ..............................26

*Housley v. City of Poway*,
 20 Cal.App.4th 801 (1993) ................................................................23

*In re Katrina Canal Breaches Litig.*,
 495 F.3d 191 (5th Cir. 2007) ..............................................................12

*Kelley v. City of Cedar Park*,
 No. 1:20-CV-481-RP, 2022 WL 329342 (W.D. Tex. Feb. 3, 2022) ...........................3

*Lang v. Texas Dep't of Crim. Just.*,
 No. 6-20-CV-00653-ADA, 2021 WL 1199624 (W.D. Tex. Mar. 30, 2021)..........................20

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)..............................................................20, 22, 26

iii

*Maldonado v. City of Pearsall, Tex.*,
  977 F. Supp. 2d 646 (W.D. Tex. 2013) ...................................................................12

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*,
  369 F.3d 464 (5th Cir. 2004) ................................................................................12

*In re Mirant Corp.*,
  2010 WL 8708772 (N.D. Tex. Apr. 22, 2010) ......................................................26

*Molock v. Whole Foods Mkt. Grp., Inc.*,
  952 F.3d 293 (D.C. Cir. 2020) ...............................................................................1

*Nagy v. Nagy*,
  210 Cal.App.3d 1262 (1989) ...........................................................................18, 25

*Noah v. Gov't Employees Ins. Co.*,
  No. SA 00-CA-018, 2001 WL 36199119 (W.D. Tex. Apr. 9, 2001) .....................22

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) .......................................................................3, 19, 20

*Perillo v. Picco & Presley*,
  70 Cal.Rptr.3d 29 .................................................................................................24

*Prestage Farms, Inc. v. Bd. of Sup'rs of Noxubee Cty., Miss.*,
  205 F.3d 265 (5th Cir. 2000) ................................................................................22

*Semore v. Eric Pool*
  (1990) 217 Cal.App.3d 1087 ................................................................................24

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011) ...............................................................................................1

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ..........................................................................................23

*Steele Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................................23

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ..............................................................................................21

*Teutscher v. Woodson*,
  835 F.3d 936 (9th Cir. 2016) .....................................................................12, 13, 17

*In re THEAG N. Arlington LLC*,
  No. 19-41108-ELM, 2020 WL 7330055 (Bankr. N.D. Tex. Dec. 11, 2020) .........19

*Three Expo Events, L.L.C. v. City of Dallas, Texas*,
    907 F.3d 333 (5th Cir. 2018) ...............................................20

*Tuchman v. DSC Commc'ns Corp.*,
    14 F.3d 1060 (5th Cir. 1994) ...............................................12

*United States v. Hays*,
    515 U.S. 737 (1995)...............................................19

*Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*,
    666 F.3d 932 (5th Cir. 2012) ...............................................19

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ...............................................3

*Ward v. Nat'l Ent. Collectibles Ass'n, Inc.*,
    No. CV-1106358-MMMCWX, 2012 WL 12885073 (C.D. Cal. Oct. 29, 2012)....................25

*Warth v. Seldin*,
    422 U.S. 490 (1975)...............................................26

*In re Whittington*,
    530 B.R. 360 (Bankr. W.D. Tex. 2014)...............................................20

**Statutes**

Cal Lab. Code § 3600(a) ...............................................23

Fed. R. Civ. P. 8(a)(2)...............................................11

Federal Rule of Bankruptcy Procedure 7054(a) ...............................................11

Federal Rule of Civil Procedure 54(b)...............................................11

Federal Rules of Civil Procedure Rule 201 ...............................................3, 20

Fla. Stat. Ann. § 440.11 ...............................................24

Rule 12(b)(1)...............................................1, 3, 6, 18, 19, 20, 28

Rule 12(b)(6)...............................................1, 2, 11, 12

**Other Authorities**

Compensation Act...............................................24

Texas Tort Claims Act ...............................................12

## I.     SUMMARY

This adversary proceeding stems from the bankruptcy of the now defunct League.[2] Plaintiffs sued to be made whole on their three-year contracts with the League to play football. Plaintiffs were made whole when they settled their claims with the League, effective February 9, 2022.

All that remains in this case are fraud claims against Dundon.[3] But, those fraud claims[4] must be dismissed because Plaintiffs elected a remedy when they settled with the League that is wholly inconsistent with the remedies they seek against Dundon. Plaintiffs obtained settlement under a contract theory where they were required to demonstrate they willingly performed under the Standard Player Agreements ("SPA" or "SPAs") through the termination of the league and would have continued to perform through the remainder of the SPAs. Under the contract remedy, Plaintiffs were required to have voluntarily exposed themselves to injury and forego other opportunities. The settlement class, which Plaintiffs voluntarily joined, included only players who signed the SPAs and who were on active team rosters as of April 2, 2019. Plaintiffs settled with the Trustee on the contract theory and are thereby entitled to additional payments and an unsecured claim in the bankruptcy proceeding for the remaining balance of what was owed them under the

---

[2] The entities that comprise the now bankrupt Alliance of American Football are referred to collectively herein as the "League."

[3] The Court dismissed, with prejudice, the promissory estoppel and inducing breach of contract causes of action Plaintiffs asserted originally, and Plaintiffs dismissed their failure to pay wages under the California Labor Code cause of action. In light of the settlement the Court approved, on February 9, 2022, a dismissal of the lead plaintiffs' remaining claims against the only remaining defendant will end this adversary case. *See* Adv. ECF # 81, 128, 215, 221.

[4] Plaintiffs asserted and litigated their fraud and promissory fraud as California torts. Without waiver to the applicability of such claims with regard to Plaintiffs or the class members on whose behalf they purport to sue, Dundon addresses this motion and plaintiffs allegations under the prism of fraud and promissory fraud as California torts.

**DEFENDANT THOMAS G. DUNDON'S MOTION TO DISMISS**                    **PAGE 1**

three-year SPAs. And, Plaintiffs assigned any potential claims against Dundon relating to rights, benefits, or payments under the SPA to the Trustee.

The only remedy sought under the fraud claim against Dundon requires Plaintiffs to demonstrate that they would have repudiated or rescinded the SPAs but for Dundon's alleged misrepresentations. In other words, Plaintiffs seek damages for injury they would not have suffered had they abandoned the SPAs in February 2019, when Dundon entered the picture. In other words, but for Dundon's alleged misrepresentations, Plaintiffs would not have been exposed to the risk of harm, personal/emotional injury, or lost opportunities by continuing to perform the SPAs. Plaintiffs are not entitled to recover inconsistent remedies such as these as a matter of law. In other words, in the but-for world where Dundon did not allegedly defraud them, they can no longer claim they would have walked out and breached the SPAs after not receiving payment. They could only be part of the settlement by confirming they fulfilled their obligations under the SPAs through April 2, 2019, and that they would have completed performance under the SPAs had the League. This election of remedies eviscerates any alternative theory of fraud against Dundon. Because they have already selected the contract remedy, obtained judgment from this Court on that remedy, and assigned away any potential claim against Dundon under the contract remedy, they can no longer pursue their fraud claims against Dundon. As a result, Plaintiffs have not stated a claim against Dundon and dismissal is appropriate.

Alternatively, Plaintiffs have identified no remaining injury-in-fact to confer standing on them to pursue claims against Dundon. Plaintiffs premise their fraud and promissory fraud claims against Dundon on statements Dundon allegedly made during a radio interview that they admit they never heard.[5] The essence is that Dundon allegedly committed to invest $250 million into the

---

[5] While Rule 12 motions are typically limited to a pleading analysis, the Rule 12(b)(6) analysis extends beyond just the pleadings to documents attached to or incorporated into the complaint, matters of which judicial notice may be

League and then he didn't. These statements occurred *after* Plaintiffs entered the SPAs and *after* Plaintiffs began playing football for the League. Plaintiffs claim they relied on Dundon's statements and suffered harm by continuing to play football—despite their preexisting contractual obligations to do so—until *the League* filed bankruptcy.

The entire basis of Plaintiffs' surviving fraud claims against Dundon effectively rests on the notion that Dundon failed to fund the League. Dundon's obligations to the League are not something Plaintiffs have standing to pursue—especially when Dundon was not a party to the SPAs. The only conceivable harm caused to Plaintiffs as a result of the alleged fraud is that they did not receive full payment under their contracts with the League. Those claims are settled and the players assigned to the League any and all remaining claims arising under the SPAs.

The remaining fraud claims against Dundon rest on the flimsy notion that Dundon's statements convinced them to not breach their preexisting obligations under the SPAs by playing football for what amounted to an additional 42 days. But Plaintiffs have failed to establish any of the alleged injuries stemming from the alleged claims against Dundon are an injury-in-fact that affords them standing to continue their claims against Dundon.

Plaintiffs contend Dundon harmed them because: (1) *the League* failed to pay the remaining two years and two weeks of the SPAs; (2) Plaintiffs endured a "risk" of harm by playing for *the League* under the SPAs, (3) Plaintiffs suffered actual physical and emotional harm playing for *the League* under the SPAs, and (4) playing for *the League* cost Plaintiffs future opportunities.

---

taken under Rule 201 of the Federal Rules of Civil Procedure, and matters of public record. *In re Cyr*, 602 B.R. 315, 323 (Bankr. W.D. Tex. 2019) (Gargotta, J.) (internal quotation omitted)); *Kelley v. City of Cedar Park*, No. 1:20-CV-481-RP, 2022 WL 329342, at *10 (W.D. Tex. Feb. 3, 2022) (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)). Regarding the Rule 12(b)(1) analysis, the Court considers limited evidence when there is a "factual attack" to determine whether the Court has subject matter jurisdiction over injuries alleged. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Accordingly, Dundon provides an Appendix to support this Motion.

Plaintiffs attempt to link each of these categories of damages (allegedly incurred while performing under the SPAs for the League) to their surviving fraud claims against Dundon.

Plaintiffs lack standing to pursue any of these alleged injuries, as follows:

- **<u>SPA Payments</u>** – the Court resolved all claims for damages arising under the SPAs when it approved the settlement between Plaintiffs and the League. Plaintiffs further assigned any remaining claims connected to payments or benefits under the SPAs to the Trustee, thus eliminating any standing to pursue damages for payments or benefits under the SPAs.

- **<u>Risk of Harm</u>** – this is not an injury conferring standing as a matter of law.

- **<u>Physical Harm</u>** – Schmidt suffered no physical injury playing for the League. Therefore, he has no standing to pursue any damages tied to physical injury. While Northrup injured his thumb, that injury occurred in the course and scope of Northrup's employment with the League, and Northrup incurred no out-of-pocket expenses related to the thumb injury. Traceable harm, if any, ties to the League and not Dundon, a third party. Regardless, physical injuries incurred in the course and scope of employment also fall within the applicable workers' compensation exclusivity provisions, which would prohibit Northrup for pursuing a claim for the injury.

- **<u>Emotional Harm</u>** – California fraud claims cannot rest solely on emotional distress damages. Even so, Plaintiffs connect their alleged emotional harm to the League's failure and not receiving full compensation under the SPAs. Dundon is not the League, nor is he a party to the SPAs or responsible for any damages arising therefrom, which Plaintiffs already settled or assigned.

- **<u>Missed Opportunities</u>** – Plaintiffs gave up other opportunities when they signed three-year SPAs before Dundon entered the picture. Plaintiffs had no lost opportunities during the 42-day period between when Dundon made alleged misrepresentations and when the League folded. And, Plaintiffs were free to and did pursue and accept alternative employment after the League filed bankruptcy and terminated the SPAs, each playing in the XFL.

Accordingly, this case can end because there is absolutely no harm—alleged or incurred— traceable to Dundon to confer subject matter jurisdiction.

## II.    PERTINENT PROCEDURAL FACTS AND BACKGROUND

### A.    Dundon Transferred This Matter to the Western District of Texas.[6]

1.    On April 10, 2019, Plaintiffs sued Dundon, Ebersol, and the League in the Superior Court of California in San Francisco County, California. Dundon removed this case to the United States District Court for the Northern District of California.

2.    On September 6, 2019, the Northern District of California transferred the case to the United States District Court for the Western District of Texas, San Antonio Division. Two weeks later, the Western District Court referred the case to this Court. Case No. 5:19-cv-01080-FB, ECF #32. Dundon and Ebersol then filed motions to dismiss. *See* Adv. ECF #29, 38-40, 46, 94. After multiple pleading amendments and hearings on subsequent motions to dismiss, the Court dismissed all but the fraud and promissory fraud causes of action against Dundon. *Compare* Adv. ECF #87 (SAC) *with* # 81, 82, and 128.

3.    Plaintiffs' surviving fraud cause of action (and corresponding damages) are limited to the following allegations:

- Dundon knew the League[7] would fold if "the AAF failed to make the payments owed to Plaintiffs and other Class members ***per the term of their [SPAs]*** with AAF Players, LLC," ¶ 149;

- "Dundon knew . . . he did not provide ***the league*** with a permanent financial solution" and "never intended to provide ***the league*** with a permanent solution," ¶¶ 154-55;

- Dundon induced Plaintiffs "to alter detrimentally their position regarding their ***employment with the [League]***," ¶ 156;

---

[6] Dundon consolidates the recitation of the procedural history of this matter because the Court is well-versed.

[7] As addressed in prior filings, the now former Defendant AAF Players, LLC, one of the entities that comprise of the League, is the party with which Plaintiffs contracted, the party to the SPAs Plaintiffs entered, and Plaintiffs' former employer. *See* App. at App. Ex. A at App. 002, 005 § (1)(a); App. Exh. B at App. 026, and 029 § (1)(a).

- Plaintiffs "decided they would not continue playing football in the AAF absent (1) *payment for the previous games* and (2) an understanding that there was enough capital to cover the *entire term of Class Members' contract*," ¶ 156;

- In reliance on all of the defendants' alleged concealment and misrepresentations, Plaintiffs continued to play in the League and were "wrongfully subjected . . . to serious *risk of physical damage* . . . *and actual physical damage*," ¶ 163;

- Dundon "had to make a full and fair disclosure regarding the league's true purpose and financial inability to honor the *terms of Class members' contracts*," ¶ 164;

- Dundon's alleged "concealed or suppressed facts regarding the league's (and their) true purpose" were instrumental in the players "subjecting himself [sic] to *serious risk of physical harm or actual damage to his [sic] physical health*," ¶ 166;

- After the League failed to pay the players, Plaintiffs would have stopped playing "but-for Dundon's post-funding comments disseminated to players by multiple channels" and "would have sought alternative employment and residential opportunities," ¶ 166(b)(ii);

- Because of Dundon's conduct, Plaintiffs and the class members (1) "subjected themselves to serious risk of physical harm or damage to health," (2) "actual physical harm and damage to health," and (3) "forewent other financial opportunities." ¶ 167.

Adv. ECF #87 (emphasis added).

4.     Plaintiffs effectively recycled the same allegations and damages claims against Dundon for their surviving promissory fraud claim. *See id.*, ¶¶ 175, 178, 180, 186, 187.

**B.     The Parties Entered Phased Discovery and Deposed the Lead Plaintiffs.**

5.     The parties commenced phased class discovery after the court rendered its decisions on the pre-discovery motions, deposing Plaintiffs Schmidt and Northrup.[8]

6.     Northrup's deposition testimony revealed:

- Northrup signed a contract with the League (before Dundon made his investment) where he agreed to play football for three years, App. 054 (16:1-6); App. 055 (18:3-9) App. 056 (21:3-10);

---

[8] Dundon provides the Court with evidence as part of its factual attack under Rule 12(b)(1) exclusively, and such evidentiary information contained in the adjoining Appendix is not referenced or used to support the 12(b)(6) portion of this Motion.

- The first time Northrup heard of Dundon was February 19, 2019, after he signed his contract with the League, App. 081 (146:3-25);

- Northrup's decision to sign his SPA had nothing to do with Dundon or any statement made by Dundon, App. 082 (147:4-8);

- Northrup did not have the view that during the 2019 season he could receive money for seasons not played, App. 058-059 (42:20-43:22);

- Northrup's basis for suing Dundon was Dundon misleading them and "*breaching the contract*" because "*[t]hey didn't fulfill the contract that we all signed at the end of the day*," App. 060-061 (59:13-60:25);

- Northrup never saw or listened to any radio interview from Dundon and just read reports of the interview from secondary sources, App. 067-069 (110:23-112:18);

- Northrup never read a transcript of the actual words Dundon stated in the interview, App. 083-084 (148:18-149:4);

- Northrup did not know Dundon's intentions when Dundon made his investment, App. 066 (108:4-17);

- Northrup understood Dundon pledged "$250 million *to the league* to allow *the league* to continue running so there wasn't no scare of being shut down . . .," App. 085-086 (162:22-163:6);

- Northrup believed Dundon's "lie" in the abstract was "[lying] about *keeping the league open* . . ." but he did not ever read anything that Dundon said that was a lie or that any other players heard anything that was a lie, App. 087-088 (178:4-179:8);

- Northrup could not help anyone at trial understand anything about the allegations regarding Dundon's investment and post-investment comments being disseminated, App. 070-071 (114:4-115:3);

- Northrup sustained a thumb injury but incurred no out-of-pocket expenses bills, App. 062-065 (101:17-104:8), App. 076-077 (132:5-133:10), App. 079-080 (135:16-136:6);

- Northrup's claim for "emotional pain and suffering" was based on the League shutting down, which "hit [him] hard" because he was "trying to get on with the teams . . . and the league shut down again and I'm back to square one," App. 077-078 (133:16-134:2);

- Northrup sought no professional help and incurred no expenses for the League shutting down, App. 078 (134:3-13);

- Northrup incurred no expenses related to any alleged emotional pain and is not anticipating paying for any future medical bills, App. 077-080 (133:16-136:6);

- Northrup had "*no answer*" for what injuries he or any other players suffered *other than what was owed under the contract*, App. 089-090, 181:2-182:14);

- The League said Northrup and the other players could pursue other opportunities after the end of the League, and they did so through the XFL and were allowed to when the contract with the League was cancelled, App. 072-073 (118:18-119:2), App. 074, (129:8-13);

- Northrup treated the contract as over when the league folded, App. 075, (130:17-25); and

- Northrup played in the XFL after the League suspended its operations, App. 057 (22:5-21).

App. Ex. C (emphasis added).[9]

7.      Schmidt's deposition testimony revealed:

- Schmidt never heard or listened to the radio interview that forms the basis of the claims against Dundon or read any transcript, but read reports of Dundon's interview from secondary sources, App. 107 (169:4-16);

- Dundon's statement factored in Schmidt's decision to play in Week 3 because "it reassured us that there was enough money to fund *our contracts and provided further reassurance that – that they would make payroll and we'd be able to keep playing as the terms laid out*.", App. 114-115 (255:15-256:15);

- The source of Schmidt's knowledge of Dundon's involvement with the League was Joseph Pendry, the team's general manager, and Schmidt said the "gist of what it was that there was a new *investor [in the League]*, we didn't have to worry about things going forward financially.", App. 105-106 (162:18-163:25);

- Nothing Dundon said could have authorized anyone to quit or not under the contract because *the League contracts* were being fully performed, App. 103 (136:17-22);

- Schmidt was never injured while playing in the League, App. 099 (115:15-17);

- Schmidt acted like the SPA ceased to exist after the closure of the League, App. 098 (76:19-23);

- Schmidt did not know why the League filed bankruptcy or the reason for it, App. 104 (140:10-18);

- The damages Schmidt thinks he is entitled to recover are the *contract damages and emotional pain*, App. 109-110 (242:10-243:16);

---

[9] Attached hereto and incorporated by reference as App. Ex. C are deposition excerpts of Reggie Northrup.

- Schmidt incurred no medical bills or expenses tied to closure of the League, just incurred contract losses, App. 110-113 (243:24-246:7);[10]

- Schmidt claims he had "emotional trauma" but his daily life did not change in any material way other than no longer working for the League, which was bankrupt, and he found work with the XFL, and the source of his alleged emotional pain is the closure of the League, App. 100-102 (129:18-131:4); App. 110-111 (243:24-244:17);

- Schmidt was paid for all games he played and until the League shut down, App. 116 (265:22-24);

- Schmidt made no contention that Dundon promised to pay Schmidt's contract, Dundon had no contract with Schmidt, and Dundon only caused Schmidt "derivative harm" because his actions were towards the League, App. 117 (272:10-24); and

- Dundon did not cause Schmidt personal harm, App. 117-118 (272:25-273:4).

App. Ex. D (emphasis added).[11]

## C. The Court Resolved and Adjudicated All Damages Connected to the SPAs When it Approved the Settlement Between Plaintiffs, the Trustee, and Ebersol.

8. On January 27, 2021, the Trustee, Ebersol, and Plaintiffs (referred to collectively as the "Settling Parties") filed their Joint Motion for (1) Final Approval of the Settlement Agreement; (2) Class Certification Pursuant to the Settlement Agreement; (3) Appointment of Class Counsel and Class Representatives Pursuant to the Settlement Agreement; and (4) Approval of Compensation for Class Counsel and Service Awards for Class Representatives ("Joint Motion for Final Approval"). Adv. ECF #204.[12]

9. As part of the settlement process, the Settling Parties provided Plaintiffs with a class notice, which stated (among other things):

### 13. What am I giving up to get a payment or stay in the settlement?

---

[10] Schmidt testified to having some undisclosed "moving costs," but that was connected to the League ending, not Dundon's statements. *See id.* at App. 110-111 (243:24-244:5).

[11] Attached hereto and incorporated by reference as App. Ex. D are deposition excerpts of Colton Schmidt.

[12] The Settling Parties replaced their originally filed Joint Motion for Final Approval, Adv. ECF #204, with Adv. ECF #210, on February 3, 2022. *See also* Adv. ECF #211.

> [Y]ou cannot sue, continue to sue, or be part of any other lawsuit against the Settling Defendants about the issues released as part of the Settlement. Also, you **give up your right to pursue on your own any damages related to payments or benefits of [League] employment** you contend you were denied again Defendant Dundon.

Adv. ECF #204-1, p. 55 of 555 (emphasis added).

10.     In the Joint Motion for Final Approval, the parties specifically delineated between the damages Plaintiffs attribute to Dundon and those either settled or assigned to the Trustee:

> Plaintiffs will retain all claims against Dundon, even those for which Dundon's failure to fund (or failure to cause Dundon Capital Partners, LLC to fund) the AAF is a causal element, to the extent those claims are premised on damages for **personal injury, mental anguish, or foregone economic opportunities** due to being induced to play or continue to play for the [League], and not merely the inability of the [League] to pay promised wages or benefits.

Adv. ECF #210, ¶ 13d)(b)(emphasis added).

11.     On February 9, 2022, the Court granted the Joint Motion for Final Approval. Adv. ECF #215. The order approved the Plaintiffs receiving a priority wage claim for the remaining two weeks of the first season under the SPAs, totaling $13,650.00, and an unsecured claim for $180,000 (each) for the final two years of the SPAs. *Id.* ¶ 9(ii)-(iii). The settlement was conclusive to the entire class of former players on whose behalf Plaintiffs purport to sue Dundon for the fraud, as no class member opted out of the settlement. *Compare id.* ¶¶ 8, 10 *with* Adv. ECF #87 ¶ 15.

12.     Plaintiffs assigned to the bankruptcy estate "all their rights and interests in any and all claims against the Debtor and Ebersol and their right to recovery of certain damages recoverable against Dundon limited specifically to the amounts not paid under the SPAs," thereby eliminating all claims for damages against Dundon arising under the SPAs. Adv. ECF #210, ¶ 13d)(f).[13]

---

[13] The Court also announced this assignment during its oral ruling on the Joint Motion for Preliminary Approval, Adv. ECF #175, on October 1, 2021.

13.     Plaintiffs only retained claims against Dundon for liability or damages related to the alleged "failure to fund . . . the [League] . . . to the extent those claims are premised on damages for personal injury, mental anguish, or foregone economic opportunities . . . and not merely the inability of the [League] to pay promised wages or benefits." *Id*., ¶ 13d)(b).

14.     On March 14, 2022, the Court granted Plaintiffs', the Trustee's, and Charles Ebersol's Joint Motion for Entry of Partial Final Judgment under Federal Rule of Bankruptcy Procedure 7054(a) and Federal Rule of Civil Procedure 54(b), and entered a partial final judgment. Adv. ECF #221.

## III.     RULE 12(B)(6) MOTION TO DISMISS: THE COURT SHOULD DISMISS PLAINTIFFS' FRAUD CLAIMS BECAUSE PLAINTIFFS FAILED TO STATE A CLAIM FOR RELIEF.

### A.     Rule 12(b)(6) of the Federal Rules of Civil Procedure Legal Standard.

The Federal Rules of Civil Procedure require Plaintiffs to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When the plaintiff fails to do so, the Court may dismiss the action for failing to state a claim for relief. FED. R. CIV. P. 12(b)(6); *see also Twombly*, 550 U.S. at 570 (When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *accord Iqbal*, 556 U.S. at 678.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged. *In re Cyr*, 602 B.R. at 327 (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

unlawfully. *Iqbal*, 556 U.S. at 678. Rule 12(b)(6) of the Federal Rules of Civil Procedure requires the Court to evaluate the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The pleadings, however, must contain "specific facts, not mere conclusory allegations." *Maldonado v. City of Pearsall, Tex.*, 977 F. Supp. 2d 646, 649 (W.D. Tex. 2013) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1060, 1067 (5th Cir. 1994). Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has elected a remedy inconsistent with an existing claim. *See e.g., Dahlem v. Ash*, No. MO-07-CV-041, 2007 WL 9706418, at *3 (W.D. Tex. Dec. 5, 2007) (dismissing a federal cause of action when it conflicted with an election of remedies provision within the Texas Tort Claims Act).

**B.      Plaintiffs Elected Remedies When Plaintiffs Settled Their Breach of Contract Claim.**

The Court should dismiss Plaintiffs' fraud claims because Plaintiffs chose their remedial relief when they settled their case against the Trustee for full payment and right to payment for the full three-year term of the SPAs and assigned to the Trustee any remaining potential claims relating to contract remedies. *See* Adv. ECF #215.

*i)  Plaintiffs can no longer pursue their claims against Dundon because they elected to obtain judgment on a contract remedy.*

The election-of-remedies doctrine, which "refers to situations where an individual pursues remedies that are legally or factually inconsistent," operates to "prevent[ ] a party from obtaining double redress for a single wrong." *Teutscher v. Woodson*, 835 F.3d 936, 955–56 (9th Cir. 2016). A party is bound by his election of remedies if three conditions are met: "(1) two or more remedies ... existed at the time of the election, (2) these remedies [are] repugnant and inconsistent with each

other, and (3) the party to be bound ... affirmatively chose[ ], or elected, between the available remedies." *Id.*

When one party has been injured by a breach of contract and either lacks the ability or the desire to keep the contract alive, that party can choose between two different remedies; (1) treat the contract as rescinded and recover damages resulting from the rescission; or (2) treat the contract as repudiated by the other party and recover damages to which it would have been entitled had the other party not breached the contract or prevented performance. *Akin v. Certain Underwriters at Lloyd's London*, 140 Cal. App. 4th 291, 296, 44 Cal. Rptr. 3d 284, 287 (2006)(internal citations omitted). An action for rescission is based on the disaffirmance of the contract and an action for damages for breach of contract is based on its affirmance. *Id.* An action for rescission and an action for breach of contract are alternative remedies. The election of one bars recovery under the other. *Id.* at 288. The award given in an action for damages compensates the party not in default for the loss of his 'expectational interest'-the benefit of his bargain which full performance would have brought. *Id.* Relief given in rescission cases-restitution and in some cases consequential damages-puts the rescinding party in the *status quo ante,* returning him to his economic position before he entered the contract." *Id.*

Plaintiffs have made claims under two entirely inconsistent remedies. Plaintiffs were, of course, entitled to pursue two inconsistent remedies in litigation. But once Plaintiffs elected and obtained a judgment on one remedy, that election precludes them from continuing to pursue the inconsistent remedy.

### ii) *Plaintiffs plead two different remedies.*

#### (a)    Plaintiffs' Contract Remedy.

Under the first theory of recovery, Plaintiffs sought a contract remedy. Plaintiffs plead that

the League "materially breached the contracts by . . . failing or refusing to pay Class members the annual base compensation in the amounts stated in the contracts [and the League] clearly and positively indicated, by words and/or conduct, that it will not and cannot meet the contract requirements, including by filing of Chapter 7 bankruptcy." Plaintiffs contend that they "substantially performed every material condition, covenant, and obligation owed to Defendant AAF Players under the contracts." Adv. ECF #87 ¶ 110. Further, Plaintiffs contend that, "on April 2, 2019, [the date the League was shut down] [Plaintiffs] stood ready to perform every material condition, covenant, and obligation owed to AAF Players under the terms of their Form Contracts for the remaining term." *Id.* ¶ 102.

Under this theory, Plaintiffs were required to have performed under their SPAs through the time of the League shut down and were required to stand ready to complete the terms of the SPA. Under this scenario, Plaintiffs were required to forego other opportunities to play football. Plaintiffs were required to expose themselves to the risks of playing football, including suffering any physical or emotional injury inherent in doing so. These risks and missed opportunities were part and parcel of their obligations under the SPA, which they had to have performed in order to recover under the contract theory.

      (b)      <u>Plaintiffs' Repudiation/Rescission Remedy</u>.

Plaintiffs' alternative theory rests on contract repudiation or rescission theories. Plaintiffs claim that, prior to Dundon's representations concerning funding the League, they had "decided they would not continue playing football in the AAF absent: (1) payment for the previous games and (2) an understanding that there was enough capital to cover the entire term of Class Members' contract." *Id*. ¶¶ 67, 156. And that they would not have "***continued*** to subject themselves to serious risk of harm or damage to their health resulting from playing professional football and continued

to forego other financial opportunities but for Dundon's statements . . . and alleged financial commitment to the league following the initial weeks of games." *Id*. ¶¶ 88, 169; *see also* ¶¶ 187-189 (emphasis added).   Under this theory, Plaintiffs contend, had they known the truth behind Dundon's alleged misrepresentations, they would not have performed under the SPAs and were prepared to breach/repudiate the SPAs in the absence of payment and financial security. And, had they abandoned their contracts at that time, they would not have exposed themselves to injury or missed out on other opportunities.

### iii) *Plaintiffs' remedies are inconsistent with each other.*

Under the contract remedy, Plaintiffs must aver they performed and were willing to continue to perform through the duration of the agreement. And, as a result, they are entitled to the full benefits of the agreement. As part of Plaintiffs' willingness to perform and continue to perform the SPAs, they were necessarily obligated to expose themselves to the risk of physical and emotional injury and forego other opportunities.

Under the repudiation/rescission theory, however, Plaintiffs contend they would have rescinded or repudiated the SPAs and walked away from the League in February 2019. *Id*. ¶ 169, 187-189. And, thereby, would have avoided physical or emotional injury and would not have missed out on other opportunities after Dundon came into the picture. *See id*. Under the repudiation/rescission remedy, Plaintiffs would not be entitled to any further benefits or payments under the SPAs. Rescission and contract remedies are mutually exclusive as a matter of law. *See Akin*, 140 Cal. App. 4th at 296. Thus, the contract remedy and repudiation/rescission remedies are both factually and legally repugnant and inconsistent.  *Compare id. with* Adv. ECF #87 ¶¶ 110, 169, 187-189.

***iv) Plaintiffs chose the contract remedy and are now precluded from the rescission/repudiation remedy.***

Plaintiffs entered the settlement agreement with the League under the contract theory. *See* Adv. ECF #204-1, 210, 215, 221. Pursuant to the settlement, Plaintiffs received immediate payment for the rest of the 2019 season and an unsecured subordinated claim for the 2020 and 2021 seasons. Adv. ECF #204-1, 210, ¶¶ 9(ii)-(iii), 13d)(b). Plaintiffs could only participate in the settlement and be part of the settlement class by confirming they had fully performed under the SPAs through the date of League termination—April 2, 2019—and that they were ready and willing to perform the SPAs for the remainder of their terms. Adv. ECF #87 ¶¶ 15, 102, 110-111. Additionally, as consideration for the settlement, Plaintiffs assigned any remaining contract remedies arising out of the SPAs to the Trustee, including any such claims against Dundon. Adv. ECF #175-1 at pp. 19-20 of 66 (¶ 15(b)). Therefore, any potential claim Plaintiffs may have had against Dundon arising from the SPAs under the contract theory no longer belong to nor can be asserted by Plaintiffs. Plaintiffs took it a step further by seeking judgment approving the settlement for them and the entire class and Plaintiffs were awarded a premium for their service as named plaintiffs. *See* Adv. ECF #215, 221.

The settlement and judgment thereon was a clear and unequivocal election of the contract remedy. Of course, Plaintiffs may not ultimately recover full payment for their unsecured claims for the 2020 and 2021 seasons, which would leave open the potential for recovering the remainder of those contract damages from others, such as Dundon. But, Plaintiffs have no contractual privity with Dundon so they could not recover anything from Dundon under the SPAs. And, more importantly, Plaintiffs assigned all such claims, if any, to the Trustee as part of the settlement. To wit, Plaintiffs acknowledged:

>      Also, you **give up your right to pursue on your own any damages related to**
>      **payments or benefits of [League] employment** you contend you were denied again
>      Defendant Dundon.

Adv. ECF #204-1, p. 55 of 555 (emphasis added); *see also*, Adv. ECF #215, 221.

Plaintiffs cannot recover contract and fraud damages where the damages are premised on inconsistent remedial theories. *Akin*, 140 Cal. App. 4th at 296. Plaintiffs' fraud damages are solely premised on the rescission/repudiation remedy. Adv. ECF #87 ¶¶ 167-69, 185-89. In other words, those damages do not exist under the contract remedy because the contract remedy required Plaintiffs to perform the SPAs, expose themselves to injury, and forego other opportunities. Said a different way, granting Plaintiffs judgment providing the contract remedy (payment for the full term of the contract) and the fraud remedies (payment for injury or lost opportunity) would give Plaintiffs a prohibited double recovery. *Teutscher v. Woodson*, 835 F.3d 936, 955–56 (9th Cir. 2016).

Under the contract remedy, Plaintiffs were permitted to retain the compensation for games they did play in the 2019 season, and for two additional games they did not play. Any injuries suffered or opportunities forwent were part of Plaintiffs' fulfillment of their contractual obligations, which were required to entitle them to the payments received under the SPAs. If Plaintiffs were also permitted to receive damages for injuries suffered or lost opportunities, they would receive a double recovery.

Accordingly, when Plaintiffs elected the contract remedy against the defendants in this matter and accepted the damages associated with such a remedy, they became bound by that election. *See id.*; *Akin*, 140 Cal. App. 4th at 296. And they can no longer pursue the rescission/abandonment remedy or damages associated with that remedy. Now that judgment has been sought and entered, Plaintiffs no longer state a claim against Dundon as a matter of law and

the case should be dismissed.

**IV.** **RULE 12(B)(1) MOTION TO DISMISS: ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' FRAUD CLAIMS BECAUSE PLAINTIFFS SUFFERED NO REDRESSABLE INJURY-IN-FACT THAT IS CONCRETE OR TRACEABLE TO DUNDON.**

Even in the absence of the election of remedy issue, Plaintiffs have no standing to continue against Dundon because they have suffered no injury-in-fact traceable to Dundon. Plaintiffs claim only the following categories of damages against Dundon:

(1) Failure to fulfill the League's payment obligations for the duration of the *SPAs*;

(2) Plaintiffs subjected themselves to *risk* of physical harm or damage to their health resulting from playing professional football;

(3) Actual *physical harm from playing football*—arising from the contractual obligations that predated Dundon's investment—and *emotional harm*; and

(4) Foregoing of other unspecified *financial opportunities* because of the SPAs limitations.

*See* Adv. ECF #87, ¶¶ 167-69, 187-89 (emphasis added). Plaintiffs fully and finally settled or assigned the only injury-in-fact they could establish—the contract damages arising from the SPAs. Adv. ECF #204-1, p. 55 of 555, 215, 221. As discussed below, Plaintiffs suffered no other injuries-in-fact traceable to Dundon. *See Nagy v. Nagy*, 210 Cal.App.3d 1262, 1268 (1989) ("Fraudulent representations which work no damage cannot give rise to an action at law.") (citing *Abbot v. Stevens*, 133 Ca.App.2d 252, 247 (1955)). Accordingly, the Court lacks subject matter jurisdiction to adjudicate Plaintiffs' remaining causes of action against Dundon, the only remaining defendant.

**A.** **Rule 12(b)(1) of the Federal Rules of Civil Procedure Legal Standard.**

Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction where expressly conferred by the Constitution and federal statute. *Empower Texans, Inc. v. Nodolf*, 306 F. Supp. 3d 961, 965 (W.D. Tex. 2018) (quotation omitted)). Accordingly,

dismissal is warranted if the plaintiff's allegations, together with any undisputed facts, do not establish the Court has subject matter jurisdiction. *Id.* (quotation omitted). Likewise, "[t]he federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (internal quotations and citations omitted). A lack of subject matter jurisdiction can be raised at any time. *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 935 (5th Cir. 2012). Federal Rule of Civil Procedure 12(b)(1) enables a party to challenge subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Standing is a subject matter jurisdiction issue that a contesting party can attack through a Rule 12(b)(1) motion to dismiss. *In re THEAG N. Arlington LLC*, No. 19-41108-ELM, 2020 WL 7330055, at *11 (Bankr. N.D. Tex. Dec. 11, 2020) (omitting citations)).

When ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). If the defendant launches a "factual attack" on the court's subject matter jurisdiction, the Court can consider "affidavits, testimony, or other evidentiary materials submitted by the defendant.[14] *Chase v. Nix*, No. W-15-CV-258, 2016 WL 11668710, at *2 (W.D. Tex. June 3, 2016) (citing *Peterson*, 644 F.2d at 523)). When a defendant challenges the factual basis for the Court's

---

[14] In this motion, Dundon asks the Court to consider the SAC supplemented by undisputed facts in the record. *See Den Norske Stats Oljeselskap As*, 241 F.3d at 424. Specifically, Dundon respectfully requests the Court consider Appendix filed in support, which includes the SPAs for Plaintiffs and certain excerpts of Plaintiffs' sworn testimony, which Dundon does not dispute. In addition, Dundon asks the Court to take judicial notice, pursuant to FED. R. CIV. P. 201, of Adv. ECF #81, 82, 87, 175, 175-1, 204, 204-1, 210, 210-1, 211, 215, 219, and 221.

subject matter jurisdiction under Rule 12(b)(1), the **plaintiff** has the burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction. *Paterson*, 644 F.2d at 523 (emphasis added); *Bhd. of Locomotive Engineers & Trainmen v. Union Pac. R.R. Co.*, No. EP-21-CV-122-DB, 2021 WL 2784318, at *2 (W.D. Tex. July 2, 2021). When there is a factual challenge, "there is no presumption of truthfulness attached to the plaintiff's allegations." *Lang v. Texas Dep't of Crim. Just.*, No. 6-20-CV-00653-ADA, 2021 WL 1199624, at *3 (W.D. Tex. Mar. 30, 2021) (citing *Paterson*, 644 F.2d at 523)). The case must be dismissed if there is no subject matter jurisdiction. *Chase*, 2016 WL 11668710, at *2 (citing FED. R. CIV. P. 12(h)(3)).

To have standing, and therefore a justiciable case or controversy, the plaintiff must show: (1) it suffered an injury-in-fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action and not the result of an independent action or third party; and (3) it is likely the injury will be redressed by judicial action. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992); *In re Whittington*, 530 B.R. 360, 390 (Bankr. W.D. Tex. 2014). The plaintiff bears the burden of establishing standing, and "each element [of the three-part standing inquiry] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Three Expo Events, L.L.C. v. City of Dallas, Texas*, 907 F.3d 333, 341 (5th Cir. 2018) (quoting *Lujan,* 504 U.S. at 560-61)).

**B.      Plaintiffs Settled and/or Assigned All Claims for Damages Arising From the SPAs.**

Plaintiffs' fraud damages against Dundon are connected to the League failing to fulfill its payment obligations under the SPAs. Adv. ECF #87 ¶¶ 169, 187.[15] Plaintiffs corroborated this

---

[15] Dundon acknowledges Plaintiffs plead these allegations prior to their assignment of certain claims. *Compare* Adv. ECF #87 *with* Adv. ECF #219, 221. However, as detailed herein, these allegations remain part of the live pleading, and each of the Plaintiffs testified to the contract damages being a basis of their claims against Dundon. Accordingly, Dundon addresses these allegations because they are not viable for Plaintiffs or the Estate. *See* Adv. ECF #87.

position during their depositions, App. Ex. C at App. 060-061 (59:20-60:25); App. 089-090 (181:2-182:14), App. Ex. D at App. 109-110 (242:10-243:16), and the Court adjudicated these matters completely under the settlement. *See* Adv. ECF #215. Plaintiffs cannot reap a double recovery by continuing their fraud claims based on this same injury. *See Christiansen v. Roddy*, 186 Cal.App.3d 780, 790 (1986) ("A plaintiff in a tort action is not, in being awarded damages, to be placed in a better position than he would have had the wrong not been done."). Further, Dundon is not a party to the SPAs, and therefore is not liable for any contractual damages to Plaintiffs. *See* App. Exhs. A-B.

Cementing this position, Plaintiffs assigned any claim for non-payment under the SPAs to the bankruptcy estate in exchange for compensation in their settlement:

> [B]ecause Lead Plaintiffs and the Class are being compensated for their losses due to alleged nonpayment under their Standard Player Agreement with the Priority SPA Claims and the Excess SPA Claims as provided herein, Lead Plaintiffs and the Class assign the right to pursue damages for the alleged nonpayment under the Standard Player Agreements, under whatever legal theory, as part of the Assigned Claims under this Agreement. Lead Plaintiffs and the Class may therefore pursue their claims against Dundon under any legal theory but may only pursue damages under those claims to the extent the damages sought would compensate them for injuries other than the alleged nonpayment under the Standard Player Agreements.

Adv. ECF #175-1 at 19-20 of 66 (¶ 15(b)). Therefore, Plaintiffs were compensated for any damages arising under the SPAs and, to the extent additional claims arise from the SPAs or could be asserted under any legal theory, they now belong to the bankruptcy estate.

## C. Risk of Physical Harm to Plaintiffs' Health is Not an Injury-in-Fact.

An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotations omitted); *Crane v. Johnson*, 783 F.3d 244, 254 (5th Cir. 2015) (reasoning a threatened injury must be impending to constitute an injury-in-fact). For this reason,

the possibility or risk of serious injury is not an injury-in-fact. *Compare* Adv. ECF #87 ¶¶ 167, 169 *with Noah v. Gov't Employees Ins. Co.,* No. SA 00-CA-018, 2001 WL 36199119, at *6 (W.D. Tex. Apr. 9, 2001) (holding threatened injury was "merely hypothetical" and thus "insufficient to confer standing"); *see also Lujan*, 504 U.S. at 560. "Federal courts consistently deny standing when claimed anticipated injury has not been shown to be more than uncertain potentiality." *Prestage Farms, Inc. v. Bd. of Sup'rs of Noxubee Cty., Miss.,* 205 F.3d 265, 268 (5th Cir. 2000). Because standing must be satisfied when the lawsuit commenced, which here occurred after the end of any football play for the League, Plaintiffs knew the harm or lack thereof (as detailed below). *See Noah v. Gov't Emps. Ins. Co.*, No. C/A SA 00-CA-018 WWJ, 2001 WL 36199119, at *4 (W.D. Tex. Apr. 9, 2001). Therefore, Plaintiffs hypothetical or "possibility of injury" is not an injury-in-fact sufficient to confer standing for Plaintiffs' surviving fraud claims. Moreover, risk of injury for performing under a contract that predated Dundon's involvement or association with the League is not traceable to alleged statements made by Dundon after-the-fact—the factual genesis and basis of Plaintiffs' fraud claims against Dundon. *See* App. Exhs. A-B; App. Ex C at App. 054 (16:2-5), App. 055 (18:3-9), App. 056 (21:3-10), App. 081-082 (146:13-147:8); App. Ex. D at App. 105-106 (162:18-163:25), App. 114 (255:15-22), App. 117 (272:10-24).

### D. Schmidt Suffered No Physical Harm, Northrup Incurred No Costs Tied to His Thumb Injury, and Neither Plaintiff Can Establish Compensable Emotional Harm.

#### i) *Plaintiffs suffered no physical injury traceable to Dundon.*

Plaintiffs allege they suffered actual harm in the form of physical injuries while playing for the League. *See* Adv. ECF No. 87 ¶¶ 167, 169. Schmidt, however, has no standing to pursue any claim for physical injury because he suffered none. App. Ex. D at App. 099 (115:15-17); *In re Fieldwood Energy LLC*, No. 20-33948, 2021 WL 4839321, at *6 (Bankr. S.D. Tex. Oct. 15, 2021) ("A particularized injury 'must affect the plaintiff in a personal and individual way.") (citing

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)). "A court has no subject matter jurisdiction when the party bringing claims lacks standing to assert those claims." *Id*. (quoting *Steele Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-10 (1998)).

While Northrup claims he endured a thumb injury while playing for the League, the League paid all costs related to that injury, and Northrup incurred no out-of-pocket expenses tied to that injury. App. Ex. C at App. 062-064 (101:17–103:19). Therefore, Northrup can identify no compensable injury for physical harm. *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230 (E.D. Cal. 1996) (reasoning California limits defrauded plaintiffs to recovery proximately caused by the misrepresentations and that places them in the same position they would have occupied had the misrepresentation not occurred).[16]

Further, because Northrup's injury was sustained in the course and scope of his employment, workers' compensation exclusivity bars any recovery against Dundon.[17] *See, e.g.*, Cal Lab. Code § 3600(a); *Hollingsworth v. Heavy Transp., Inc.*, 66 Cal. App. 5th 1157, 1162, 281 Cal. Rptr. 3d 738, 742 (2021) ("As a general rule, an employee who sustains an industrial injury arising out of and in the course of the employment is limited to recovery under the workers' compensation system." (internal quotation omitted)); Fla. Stat. Ann. § 440.11; *Am. Freight Sys., Inc. v. Florida Farm Bureau Cas. Ins. Co.*, 453 So. 2d 468, 470 (Fla. 2d DCA 1984) ("By accepting the benefits of workers' compensation, including the concomitant right to compensation and

---

[16] In California, a "defrauded" party "is ordinarily limited to recovering his 'out-of-pocket' loss—the difference between the value with which he parted and the value he received." *Housley v. City of Poway*, 20 Cal.App.4th 801, 812-13 (1993) (citing *Christiansen v. Roddy*, 186 Cal.App.3d 780, 790 (1986)). This is not damages of what the alleged victim "could have reaped had the promise . . . been true, but by what he lost because of his reliance on the false promise." *Housley*, 20 Cal.App.4th at 812.

[17] Plaintiffs sued under California law, but the injury was alleged sustained in Florida. App. Ex. C at 66-67 (testifying to injuring his hand during a home game for the Orlando Apollo against Memphis). Regardless, the outcome under the relevant workers' compensation statutes is the same.

medical expenses, the employee relinquishes the traditional common law right to remuneration for every element of damage suffered by him for the injury."); *Doe v. Footstar Corp.*, 980 So. 2d 1266, 1268 (Fla. 2d DCA 2008) (applying the workers' compensation exclusivity provision to heinous actions used to form independent tort claims). Northrup has no claim for damages against Dundon associated with his thumb injury because he was injured playing football for the League— an injury sustained in the course and scope of Northrup's employment. App. Ex. C at App. 063-064 (102:14–103:19). And Northrup incurred no out-of-pocket costs and expenses arising from that injury. *Id*.[18]

Even if the workers' compensation exclusivity provisions did not apply, Northrup's thumb injury is not traceable to Dundon or any comments Dundon made. As addressed in detail above, Northrup injured his thumb playing football for the League, something he contracted to do before Dundon made his statements or investments. *See* App. Ex. A, App. Ex. C at App. 054 (16:2-5), App. 055 (18:3-9), App. 056 (21:3-10), App. 081 (146:13-25), App. 082 (147:4-8). Dundon is a third party to the relationship between Northrup and the League, and therefore Northrup cannot look to Dundon for redress from injuries sustained (arguably) from the League, the party with which Plaintiffs settled and assigned all remaining claims. *See* App. Ex. A; Adv. ECF #210, 215. There is nothing to redress from the injury against Dundon because Northrup settled all claims under the SPAs, incurred no expenses, and continued his football career the following spring with the XFL. *Id*.; *see also,* App. Ex. C at App. 057 (22:5-21), App. 063 (102:14–103:19), App. 072 (118:18-119:2), App. 074 (129:8-13); Adv. ECF #204-1, 210, 215.

---

[18] The workers' compensation exclusivity also extends to emotional harm. *See, e.g., Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal.4th 800, 814-15 (2001) ("courts have barred employees from suing for psychic injuries caused by their termination.") (citing *Semore v. Eric Pool* (1990) 217 Cal.App.3d 1087, 1104–1105)); *Perillo v. Picco & Presley*, 70 Cal.Rptr.3d 29, 44 ("The exclusivity provisions of [the Workers' Compensation Act] encompass all injuries collateral to or derivative of an injury compensable by the exclusive remedies of the Act.")(internal quotation omitted).

***ii)  Plaintiffs suffered no compensable emotional harm traceable to Dundon.***

No alleged emotional harm redressable by the Court is traceable to Dundon because California fraud claims cannot rest solely on emotional distress damage.  *See de la Cerra Frances v. de Anda*, 224 F. App'x 637, 638 (9th Cir. 2007) (reasoning same); *Hammett v. Sherman*, No. 19-CV-605 TWR (AHG), 2021 WL 4692949, at *8 (S.D. Cal. Oct. 7, 2021) (recognizing same); *Ward v. Nat'l Ent. Collectibles Ass'n, Inc.*, No. CV-1106358-MMMCWX, 2012 WL 12885073, at *6 (C.D. Cal. Oct. 29, 2012) (dismissing a fraud claim where there were no compensatory damages, even though the plaintiff pled compensatory and emotional damages). "Although damages for emotional distress can be recovered in a fraud cause of action, such damages have been allowed only as an aggravation of other damages. *Nagy v. Nagy*, 210 Cal.App.3d 1262, 1270 [258 Cal.Rptr. 787, 791] (1989). Here, Plaintiffs testified to their emotional pain stemming from shutting down ***the League***.  App. Ex. C at App. 077-078 (133:16-134:2); App. Ex. D at App. 100-102 (129:18-131:4), App. 109-111 (242:10-244:17), App. 114-115 (255:17-256:15) (emphasis added). This is not an aggravation of an existing damage for any fraud traceable to Dundon. It is nothing more than repurposed claims for contract damages against the League, which Plaintiffs settled and received compensation. *See* Adv. ECF #204-1, 210, 215.  Regardless, Plaintiffs incurred no out-of-pocket expenses tied to their non-specific emotional injury. *See* App. Ex. C at App. 077-080 (133:16-136:6); App. Ex. D at App. 110-113 (243:24-246:7).

**E.    Plaintiffs Cannot Identify Any Lost Opportunities Assignable to Reliance on Dundon's Statements.**

The final category of damages Plaintiffs retained in the settlement are for "forgone economic opportunities due to being induced to play for or continue to play for the [League]." Adv. ECF No. 175-1 at pp. 19-20 of 66, ¶ 15(b).  Plaintiffs claim they missed other financial opportunities by ***continuing*** to play in the League because of Dundon's alleged fraud. Adv. ECF

No. 87 ¶¶ 167–68. However, Plaintiffs cannot link any alleged lost opportunities to Dundon's statements. To establish standing, Plaintiffs must show an injury "fairly traceable to the challenged action." *In re Mirant Corp.,* 2010 WL 8708772, at *7 (N.D. Tex. Apr. 22, 2010) (citing *Lujan,* 504 U.S. at 560-61)). To establish this requisite causal nexus with Dundon, Plaintiffs must show their "asserted injury was the consequence of [Dundon's] actions . . . ." *Hopkins v. Green Dot Corp.,* No. 5:16-CV-365-DAE, 2016 WL 4468272, at *3 (W.D. Tex. Aug. 24, 2016) (quoting *Warth v. Seldin,* 422 U.S. 490, 505 (1975)).

Plaintiffs contracted with the League and not with Dundon.  App. Ex. A-B; Adv. ECF #87 ¶¶ 30-31. Plaintiffs agreed to play for the League for three years, months before Dundon entered the picture or made the complained of statements.

- Reggie Northrup SPA is dated ***October 15, 2018***. Adv. ECF #87 ¶ 30 (emphasis added); *see also* App. Ex. A;

- Colton Schmidt's SPA is dated ***January 8, 2019***. *Id*. ¶ 31 (emphasis added); *see also* App. Ex. B; and

- Plaintiffs allege all players entered the same contract and began playing in the league on and before ***February 9, 2019***. *Id*. ¶¶ 3, 30-35, 48 (emphasis added).

Dundon's alleged "media tour to assuage fears … regarding the long-term viability of the league. . ." did not occur until ***February 19, 2019***, and therefore Dundon could not have caused Plaintiffs to undertake their obligation to play football with the League and forego other opportunities. *Id*. ¶¶ 69–72 (emphasis added). Plaintiffs already decided to forego other opportunities when they entered their employment relationship with League, and this occurred ***before*** Dundon's involvement. *See also* App. Ex. C at App. 054 (16:2-5), App. 055 (18:3-9), App. 056 (21:3-10), App. 066 (108:4-17), App. 067-069 (110:23-112:18), App. 081 (146:4-25), App. 082 (147:4-8), App. 083-084 (148:18-149:4); App. Ex. D at App. 105-106 (162:18-163:25), App. 107 (169:4-16), App. 108 (182:5-19). It is impossible that Plaintiffs forewent any economic

opportunities because of Dundon, because Dundon's actions—right, wrong, or indifferent—did not affect Plaintiffs' pre-existing contractual obligations under the SPAs.[19] Therefore, Plaintiffs have no lost opportunity traceable to Dundon. *See High v. Karbhari*, 774 F. App'x. 180, 183 (5th Cir. 2019) (holding that district court properly dismissed claim for lack of standing when plaintiff failed to explain defendant's act of assigning an investigation was "fairly traceable" to plaintiff's alleged injuries); *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 360 (5th Cir. 1999) (holding that plaintiff lacked standing because it failed to demonstrate that it had suffered damages that were "fairly traceable to any particular action by the [defendants]").

Dundon's statements occurred after Plaintiffs began playing for the League. Forty-two days passed between Dundon's statements (February 19, 2019) and the day the league closed (April 2, 2019). Neither Plaintiff could identify any opportunity they missed out on during that 42-day period after allegedly being induced to continue playing for the League. To the contrary, Plaintiffs continued to perform under the SPA for that 42-day period and the League continued to pay them. After the League shut down, Plaintiffs were free to and did pursue other opportunities. App. Ex. C at App. 057 (22:5-21), App. 072 (118:18-119:2); App. 074 (129:8-13); Ex. D at App. 100-102 (129:18-131:4), App. 110-111 (243:24-244:17).

In sum, Plaintiffs signed the SPAs, which prevented Plaintiffs from pursuing non-NFL alternative opportunities, before Dundon became involved with the League. *Compare* App. Ex. A *and* Adv. ECF #87 ¶ 30 *with* ¶ 55; *compare* App. Ex. B *and* Adv. ECF #87 ¶¶ 31 *with* ¶ 55.

---

[19] Plaintiffs attempt to skirt this issue by proffering an alternative theory—they decided to stop playing for the League between February 16 and February 19, 2019, because they did not receive payment for previous games. Adv. ECF No. 87 ¶¶ 67, 166(b). Plaintiffs further claim it was Dundon's February 19 statements that caused them to change their mind and keep playing for the League. *Id.* ¶¶ 70, 77, 85–88. Stated differently, Plaintiffs claim Dundon's February 19 statements induced them *not* to breach their obligations and continue performance under the SPAs and, consequently, prevented them from exploring alternative opportunities during the 42-day period between February 19 and April 2. This is nonsensical. Plaintiffs have no standing to pursue a viable damages model premised on the idea that a third party to their contracts "duped" them into performing and not breaching those contracts. Schmidt acknowledged this during his deposition. *See* App. Ex. D at App. 103 (136:17-22).

Plaintiffs may have decided to stop performing under the SPAs at some point, but they never did and nothing Dundon said to the general public (especially that none of the players actually heard themselves) could have or did affect their legal obligations or consequences of doing so.  Instead, Plaintiffs continued performing under the Contracts until April 2, 2019.  *See* App. Ex. C at App. 074-075 (129:8-130:25); App. Ex. D at App. 098 (76:19-23). Consequently, the SPAs remained in place throughout the 42-day period—including the provisions preventing Plaintiffs from seeking alternative opportunities. And Plaintiffs could not identify any alternative opportunity missed during the 42-day period.

For these reasons, Plaintiffs lack standing because they have no injury-in-fact for any lost opportunity against Dundon.

**F.      Plaintiffs' Election of Remedies Also Warrants Dismissal Under Rule 12(b)(1) of the Federal Rules of Civil Procedure.**

For the reasons set forth in Section III of this Motion, Plaintiffs' election of remedies also warrant dismissal pursuant to Rule 12(b)(1). Because Plaintiffs chose their contractual remedy, they no longer have an injury-in-fact that is redressable or traceable to Dundon.

## **PRAYER**

Defendant Thomas G. Dundon respectfully asks the Court to dismiss all remaining claims alleged against him in the Second Amended Class Action Complaint for Damages, with prejudice, and award him all other relief, at law or in equity, to which he is entitled.

Dated: April 5, 2022

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By:    */s/ Brent D. Hockaday*
       Jeffrey S. Lowenstein
       Texas Bar No. 24007574
       jlowenstein@bellnunnally.com
       Brent D. Hockaday
       Texas Bar No. 24071295
       bhockaday@bellnunnally.com
       2323 Ross Avenue, Suite 1900
       Dallas, Texas 75201
       214.740.1400 (Telephone)
       214.740.1499 (Facsimile)

       And

**BRANSCOMB PLLC**

Patrick H. Autry
Texas Bar No. 01447600
pautry@branscomblaw.com
Lockhill Crossing, Suite 206
4630 North Loop 1604 W.
San Antonio, Texas 78249
210.598.5400 (Telephone)
210.598.5405 (Facsimile)

**ATTORNEYS FOR DEFENDANT
THOMAS G. DUNDON**

## <u>CERTIFICATE OF SERVICE</u>

I certify on April 5, 2022, I served the foregoing document with the counsel of record by electronic means.

Boris Treyzon
Jonathon S. Farahi
Abir Cohen Treyzon Sala, LLP
16001 Ventura Blvd., Suite 200
Encino, CA 91436
Email: JFarahi@actslaw.com
Email: btreyzon@actslaw.com

AND

Nicole L. Williams
Katharine Battaia Clark
John P. Atkins
Thompson Coburn LLP
2100 Ross Avenue, Suite 3200
Dallas, TX 75201
Email: nwilliams@thompsoncoburn.com
Email: kclark@thompsoncoburn.com
Email: jatkins@thompsoncoburn.com

***Counsel for Plaintiffs***

Brian S. Engel
Barrett Daffin Frappier Turner & Engel
3809 Juniper Trace, Suite 205
Austin, TX 78738
Email: brianen@bdfgroup.com

***Counsel for Trustee Randolph N. Osherow***

*/s/ Brent D. Hockaday*
Brent D. Hockaday